877 P.2d 321 (1994)
In the Matter of the TITLE, BALLOT TITLE, SUBMISSION CLAUSE, AND SUMMARY ADOPTED APRIL 6, 1994, BY THE TITLE BOARD PERTAINING TO A PROPOSED INITIATIVE ON WATER RIGHTS.
Richard D. MACRAVEY, Ralph Adkins, Buford F. Rice, Rodney F. Kuharich, Douglas Kemper, and Fred E. Anderson, Petitioners,
v.
Jerry SWINGLE and Richard G. Hamilton, Respondents, and
Title Board; and Merilyn Handley, Stephen ErkenBrack, and Rebecca Lennahan, Respondents.
No. 94SA149.
Supreme Court of Colorado, En Banc.
July 5, 1994.
Rehearing Denied August 8, 1994.
*323 Fairfield and Woods, P.C., Howard Holme, Stephen H. Leonhardt, Craig A. Umbaugh, Brent A. Waite, Denver, for petitioners Richard D. Macravey, Ralph Adkins, Rodney F. Kuharich, Douglas Kemper and Fred E. Anderson.
Carlson, Hammond & Paddock, William A. Paddock, Melanie Kopperud Backes, K. Gwen Beacham, Denver, for petitioner Buford F. Rice.
Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Maurice G. Knaizer, Deputy Atty. Gen., Gen. Legal Services Section, Denver, for respondents Title Board, Merilyn Handley, Stephen Erken-Brack and Rebecca Lennahan.
Richard G. Hamilton, pro se.
No appearance for respondent Jerry Swingle.
Justice LOHR delivered the Opinion of the Court.
Richard D. Macravey, Ralph Adkins, Buford F. Rice, Rodney F. Kuharich, Douglas Kemper, and Fred E. Anderson (petitioners), registered electors of the State of Colorado, bring this action pursuant to section 1-40-107(2), 1B C.R.S. (1993 Supp.), seeking reversal of an action of the Title Board (Board) designating and fixing a title, together with a ballot title and submission clause, and preparing a summary for an initiative to amend Article XVI, Section 5, of the Colorado Constitution.[1]
The petitioners argue that the title, submission clause, and summary (1) do not, in several respects, correctly and fairly express the true intent and meaning of the proposed amendment, (2) fail to reflect the constitutional effects that the proposed amendment would produce, and (3) fail correctly to reflect the proposed amendment's fiscal impact. For the reasons set forth below, we affirm the action of the Board.

I.
The proponents of the initiative[2] (the proponents) submitted a draft of the initiative petition to the director of the legislative council and the office of legislative legal services (collectively, the directors) for review and comment pursuant to section 1-40-105(1), 1B C.R.S. (1993 Supp.). The directors held a public meeting at which they offered their comments concerning the initiative. The proponents then submitted the draft to the Secretary of State pursuant to section 1-40-105(4), 1B C.R.S. (1993 Supp.). The Board held a public meeting on March 16, 1994. The Board received assistance from the Office of State Planning and Budgeting and the Department of Local Affairs in preparing a fiscal impact statement. The *324 Board thereafter designated and fixed a title and submission clause and prepared a summary. The petitioners filed a motion for rehearing which was denied by the directors. This review proceeding followed.

II.
The initiative would amend Article XVI, Section 5, of the Colorado Constitution, which currently provides:
The water of every natural stream, not heretofore appropriated, within the state of Colorado, is hereby declared to be the property of the public, and the same is dedicated to the use of the people of the state, subject to appropriation as hereinafter provided.
The initiative would add the following language:[3]
NOW, THEREFORE, BE IT ENACTED BY THE PEOPLE OF COLORADO THAT FROM AND AFTER JANUARY 1, 1995, THAT THE STATE OF COLORADO ADOPT AND DEFEND A STRONG PUBLIC TRUST DOCTRINE REGARDING THE PUBLICS' RIGHTS AND OWNERSHIPS IN AND OF THE WATERS IN COLORADO; AND THAT THE PUBLIC FURTHER REQUIRES THAT THE STATE OF COLORADO PROTECT AND DEFEND THE PUBLICS' INTERESTS IN WATERS FROM UNWARRANTED OR OTHERWISE NARROW DEFINITIONS OF ITS WATERS AS PRIVATE PROPERTY; BUT, HOWEVER, THAT THE RIGHTS OF THE USES OF WATERS BY THE MANNER OF APPROPRIATION NOT BE HEREINUNDER DENIED.
ADDITIONALLY, ANY CHANGE IN THE BOUNDARIES OF A WATER CONSERVANCY DISTRICT OR A WATER CONSERVATION DISTRICT, OR ANY PROPOSAL REGARDING THE CONTINUED EXISTENCE OF A WATER CONSERVANCY DISTRICT OR A WATER CONSERVATION DISTRICT, MUST RECEIVE THE APPROVAL OF THE MAJORITY OF THE STATUTORILY QUALIFIED ELECTORS OF THAT DISTRICT'S VOTERS WHO ACTUALLY CAST BALLOTS AT AN ELECTION REGARDING SUCH ISSUES.
ADDITIONALLY, ALL DIRECTORS OF WATER CONSERVANCY DISTRICTS AND WATER CONSERVATION DISTRICTS SHALL BE ELECTED TO THOSE DIRECTORSHIPS IN A MANNER SIMILAR TO THE ELECTION OF DIRECTORSHIPS FOR OTHER COLORADO SPECIAL DISTRICTS. WATER CONSERVANCY DISTRICTS AND WATER CONSERVATION DISTRICTS SHALL INCLUDE THOSE POLITICAL SUBDIVISIONS AUTHORIZED BY STATUTE AS SUCH PRIOR TO THE EFFECTIVE DATE OF THIS SECTION, AND ANY AND ALL GOVERNMENTAL SUBDIVISIONS OF SUBSTANTIALLY SIMILAR PURPOSE AND FUNCTION OF EITHER TYPE OF DISTRICT WHICH MAY BE CREATED EITHER STATUTORILY OR CONSTITUTIONALLY HEREAFTER.
ADDITIONALLY, ANY OWNERSHIP IN THE RIGHTS OF USE OF WATERS MAY BE DECREED TO THE PUBLIC WITH THE UNDERSTANDING THAT SUCH DECREED WATER USE RIGHT SHALL BE DEDICATED TO THE BENEFIT OF ANY STREAM OR WATERCOURSE OR TO ANY LENTIC WATER BODY FOR THE BENEFIT AND USE OF THAT SYSTEM WITHOUT HINDRANCE FROM A STATE OF COLORADO OR OTHER GOVERNMENTAL BODY. IT IS FURTHER PROVIDED HERE THAT THE COLORADO WATER CONSERVATION BOARD, OR ANY GOVERNMENTAL SUBDIVISION OF A SUBSTANTIALLY SIMILAR PURPOSE AND FUNCTION WHICH MAY BE CREATED EITHER STATUTORILY OR CONSTITUTIONALLY HEREAFTER, MUST ACCEPT AND PROTECT SAID PUBLIC OWNERSHIP AND DEDICATION FROM TRANSFER FROM THE PUBLICS' *325 OWNERSHIP, OR FROM TRANSFER FROM THE WATER SYSTEM TO WHICH THAT DECREE WAS DEDICATED. IT IS SPECIFICALLY ENACTED HERE THAT ANY AND ALL DEDICATIONS OF DECREED WATERS TO THE USES OF STREAMS AND WATERS AND LAKES SHALL BE DEFENDED BY COLORADO GOVERNMENT AS AN ELEMENT IN THE MATTER OF COLORADO'S PUBLIC TRUSTS IN WATERS.
The title, as set by the Board,[4] is as follows:
AN AMENDMENT TO THE COLORADO CONSTITUTION TO REQUIRE THE STATE TO ADOPT AND DEFEND A PUBLIC TRUST DOCTRINE WITH RESPECT TO THE WATERS IN COLORADO WITHOUT DENYING THE RIGHTS OF THE USES OF WATER BY THE MANNER OF APPROPRIATION; TO DEFEND THE PUBLICS' OWNERSHIP INTEREST IN STATE WATERS; TO REQUIRE THE APPROVAL OF A MAJORITY OF A DISTRICT'S ELECTORS VOTING ON THE ISSUE BEFORE CHANGING THE BOUNDARIES OF OR ELIMINATING A WATER CONSERVANCY OR WATER CONSERVATION DISTRICT; TO REQUIRE THAT ALL DIRECTORS OF A WATER CONSERVANCY OR WATER CONSERVATION DISTRICT BE ELECTED IN THE SAME MANNER AS BOARD MEMBERS OF SPECIAL DISTRICTS; TO PERMIT THE OWNERSHIP OF WATER RIGHTS TO BE DECREED TO THE PUBLIC AND DEDICATED TO THE BENEFIT OF A PARTICULAR WATER SYSTEM WITHOUT HINDRANCE FROM A STATE OR OTHER GOVERNMENTAL BODY; TO REQUIRE THAT THE WATER CONSERVATION BOARD OR ANY GOVERNMENT SUBDIVISION WITH A SIMILAR PURPOSE AND FUNCTION ACCEPT AND PROTECT THE PUBLICS' OWNERSHIP OF DECREED WATER INTERESTS FROM TRANSFER; AND TO REQUIRE THE STATE TO DEFEND DEDICATIONS OF DECREED WATER INTERESTS AS A MATTER OF THE STATE'S PUBLIC TRUST IN WATERS.
The submission clause contains the same language as the title with the addition of the phrase "SHALL THERE BE" at the beginning and the substitution of a question mark at the end. The Board prepared the following summary:
The measure requires the state to adopt and defend a public trust doctrine with respect to the waters in Colorado without denying the rights of the uses of water by the manner of appropriation. It requires the state to defend the publics' ownership interest in state waters against attempts to define such waters in an unwarranted or narrow manner as private property.
The measure requires the approval of a majority of a district's electors voting on the issue before changing the boundaries of or eliminating a water conservancy or water conservation district. The measure requires that all directors of a water conservancy or water conservation district be elected to such position in the same manner as board members of special districts. The measure specifies that water conservancy and water conservation districts include all governmental and political subdivisions, either existing or that may be created, that have, or will have, substantially similar purposes and functions as such districts.
The measure permits the ownership of water rights to be decreed to the public and dedicated to the benefit of a particular water system without hindrance from a state or other governmental body. The measure requires that the water conservation board or any government subdivision with a similar purpose and function accept and protect the publics' ownership of decreed water interests from transfer and requires the state to defend dedications of *326 decreed water interests as a matter of the state's public trust in waters.
This measure could have a substantial, negative fiscal impact on the state and local governments. State enforcement of the public trust doctrine as required by this measure could result in an indeterminate, but significant, increase in funds required for legal proceedings. Enforcement of the public trust doctrine could also result in the "taking" of private property under the state and federal constitutions, necessitating state or local payment of compensation to owners of water rights. The public trust doctrine may decrease the amount of water available to Colorado local governments in supplying water to the public and may result in an increase in its cost. This cost would have to be borne by the Colorado local governments involved and ultimately the taxpayers.
The requirements that directors of water districts be elected and that boundary changes be approved by the voters could also negatively impact these districts. Current law provides a simplified procedure for district boundary changes resulting from municipal annexations. The election requirements in the measure would hold any such changes in abeyance until an election is held. Such a delay could affect revenue to the district and water availability to the city or town. Electing directors of water districts would also require these districts to expend more revenues than under current appointment procedures. The specific amounts of these impacts are indeterminate but could be significant.

III.
The procedures the Board must follow and the standards it must apply when setting a title, as well as the principles to which we must adhere in reviewing the Board's actions, are well settled. See, e.g., In re Petition on School Finance, 875 P.2d 207, 210 (Colo.1994); In re Proposed Initiative for and Amendment to Article XVI, Section 6, Colorado Constitution, Entitled "W.A.T.E.R.", 875 P.2d 861, 863-64 (Colo. 1994); In re Proposed Initiative on School Pilot Program, 874 P.2d 1066, 1070 (Colo. 1994); In re Proposed Initiative on "Limited Gaming IV," 873 P.2d 733, 739-40 (Colo. 1994). With this background in mind, we turn to the petitioners' arguments.

A.
The petitioners present several challenges to the title, submission clause, and summary. We address each of these individually.
First, the petitioners argue that the title, submission clause, and summary do not fairly and accurately represent the true intent and meaning of the initiative because they do not contain a definition or explanation of "strong public trust doctrine." We disagree.
At the meeting held by the directors, the proponents of the initiative gave extensive testimony concerning their interpretation of the initiative and the meaning they intended to attach to the language of the proposed amendment. The proponents testified at length as to what they meant by a strong public trust doctrine and how they intended the doctrine to interact with the prior appropriation system of water allocation. The proponents submitted to the directors a monograph detailing the meaning of the public trust doctrine and discussing the implications of adopting a strong public trust doctrine in Colorado. The proponents gave further testimony of this nature before the Board.
At the meeting of the Board, the petitioners argued that certain features of the proponents' interpretation of "strong public trust doctrine" should be included in the title and submission clause in order fairly to reflect the intent of the proposed amendment. In response to this argument, the Board noted that these interpretations were not in the measure itself. A Board member then observed: "This Board generally will not go so far as to making an assumption of what the legal interpretation would be in the measure. We'll leave that up to the courts. So we won't go beyond what the measure says, even as to interpreting." An attorney for the petitioners replied, "If the measure says "a strong public trust doctrine," leave it to the voters to figure out what that means?" The Board member answered, "The voters or the *327 courts or someone, but not this Board, unless it's defined in the measure." Id.
The petitioners now argue that the concept of a strong public trust doctrine represents a new and controversial legal standard which, under In re Proposed Initiative on Parental Notification of Abortions for Minors, 794 P.2d 238 (Colo.1990), must be included in the title and submission clause. However, in Parental Notification, the new and potentially controversial legal standard involving the definition of abortion, id. at 242, was contained in the proposed initiative itself, id. at 239. In contrast, the initiative in the present case refers only to a strong public trust doctrine. As the Board noted, nowhere in the initiative itself is this concept defined.
The petitioners express concern that if the initiative passes, the proponents, in subsequent litigation, will rely upon their briefs and testimony before the directors and the Board as evidence of the meaning of the amendment. This concern is misplaced. It is appropriate for the Board, when setting a title, to consider the testimony of the proponents concerning the intent and meaning of a proposal. In re Proposed Initiated Constitutional Amendment Concerning Unsafe Workplace Environment, 830 P.2d 1031, 1034 (Colo.1992). However, when courts construe a constitutional amendment that has been passed through a ballot initiative, any intent of the proponents not adequately expressed in the language of the measure will not govern that construction. In reviewing the action of the Board in fixing a title and submission clause, we may not interpret the meaning of an initiative or speculate as to its future application if adopted. In re Petition on School Finance, 875 P.2d at 863. Accordingly, because the proposed amendment contains no definition of "strong public trust doctrine," such a definition must await future judicial construction and cannot appropriately be included in the title or submission clause.

B.
The petitioners next argue that the word "strong" should be added before the phrase "public trust doctrine" in the title, submission clause, and summary. The proponents themselves agreed before the Board that the word "strong" should be added. At the meeting of the directors, the proponents testified as to the distinction they perceive between a strong and a weak public trust doctrine.
The initiative itself, however, refers only to a strong public trust doctrine and contains no definition of this concept. Any particular significance that may result from inclusion of the word "strong" is a matter for future interpretation and application should the initiative be adopted. The phrase "strong public trust doctrine," therefore, does not necessarily carry the specialized meaning propounded by the proponents. The voters will be informed of the essential concept that under the proposed amendment, the state must adopt and defend a public trust doctrine. Under these circumstances, we are satisfied that despite the omission of the word "strong," the title and submission clause correctly and fairly express the true intent and meaning of the proposed amendment. Moreover, the fact that the proponents agreed to the addition of the word "strong" does not require such an addition. It is the Board, not the proponents or respondents, that has the responsibility for fixing a fair and proper title and submission clause and preparing a clear and concise summary. § 1-40-106(1), (3), 1B C.R.S. (1993 Supp.).

C.
The petitioners contend that the title, submission clause, and summary are defective because they do not disclose that under the proposed amendment, the public trust doctrine would apply to certain public lands as well as to waters. The proponents testified that they intended the public trust doctrine to apply to lands as well as waters. When the petitioners brought this intent to the attention of the Board, a Board member stated: "I understand that there may be statements to that effect that have taken place; however, the interpretationif this is adopted as a constitutional amendment, the interpretation would not any longer be the interpretation of the sponsor, it would be the *328 interpretation of the court." The initiative itself contains no reference to land whatsoever. Therefore, to reflect the intent of the initiative as drafted, reference to any possible application of the public trust doctrine to lands is not required.

D.
The proposed amendment contains the following language: "THE PUBLIC FURTHER REQUIRES THAT THE STATE OF COLORADO PROTECT AND DEFEND THE PUBLICS' INTERESTS IN WATERS FROM UNWARRANTED OR OTHERWISE NARROW DEFINITIONS OF ITS WATERS AS PRIVATE PROPERTY...." The title and submission clause state only that the amendment would require the state "TO DEFEND THE PUBLICS' OWNERSHIP INTEREST IN STATE WATERS." The summary does refer to the requirement that the state defend the publics' interest in waters against attempts to define such waters in an unwarranted or narrow manner as private property.
The petitioners argue that the feature of the amendment requiring the state to defend against defining waters as private property is an essential feature of the initiative that must be disclosed in the title and submission clause.
The title and submission clause declare that under the proposed amendment, the state is to defend the publics' ownership interest in state waters. Although the title and submission clause do not specify what the state is to defend against, the intent and meaning of the initiative is correctly and fairly expressed in this regard. When any ownership interest is defended, it will be defended against other claims of ownership or interference with the owner's exercise of rights incident to that ownership interest. The meaning of the phrase "unwarranted or otherwise narrow definitions of its waters as private property" is imprecise at best and its omission does not render the title and submission clause infirm.

E.
The proponents testified before the directors that they intended that under the public trust doctrine, existing privately held water rights may be transferred to the public without consent. They also indicated that under their interpretation, such transfers might not be considered takings requiring compensation. The title and submission clause do not discuss takings or compensation. The summary states that the public trust doctrine could result in compensable takings. The petitioners now argue that the proponents' intent that the proposed amendment permit non-compensable transfers should be reflected in the title, submission clause, and summary. However, the initiative itself does not refer to takings or compensation. Again, the title, submission clause, and summary must reflect the intent of the initiative as drafted. They need not reflect intentions of the proponents that are not expressed in the measure itself. Therefore, the title, submission clause, and summary correctly and fairly express the true intent and meaning of the proposed amendment even though they make no mention of takings or compensation.

F.
The petitioners argue that the proposed amendment will directly conflict with or supersede many basic rights to private property guaranteed by the Colorado Constitution. However, the Board is not required to state the effect that an initiative may have on other constitutional provisions, and we may not address the potential constitutional interpretation implications of the initiative in this review. In re Proposed Amendment Concerning Limited Gaming in the City of Antonito (Limited Gaming IV), 873 P.2d at 740 (Colo.1994).

G.
The petitioners' final argument is that the fiscal impact statement contained in the summary is inadequate. Before it held its first public meeting on the initiative, the Board received assistance from the Office of State Planning and Budgeting and the Department of Local Affairs in preparing a fiscal impact statement. At that first meeting, the petitioners submitted to the Board a *329 letter from the Director of the Colorado Water Conservation Board (CWCB) which contained an estimate of the fiscal impact of the initiative on the CWCB. The CWCB is specifically mentioned in the proposed amendment. In the letter, the director of the CWCB estimated that the annual fiscal impact of the initiative on the CWCB would range from $750,000 to $16,600,000.
If the Board is of the opinion that a proposed amendment will have a fiscal impact on the state or any of its political subdivisions, it must request assistance from the Office of State Planning and Budgeting or the Department of Local Affairs. § 1-40-106(3)(a), 1B C.R.S. (1993 Supp.). The fiscal impact information from the Office of State Planning and Budgeting or the Department of Local Affairs is to be filed with the Secretary of State "by 12 noon on the Friday before the meeting of the [Board] at which the draft is to be considered." Id. At the meeting on the petitioners' motion for rehearing, the following exchange took place:
[Board Member] ... You made the point in your brief about the letter from the Water Conservation Board, and that, I think, is the source of the figures that you're asking be put in the fiscal impact statement.
[Petitioners' Counsel] That's correct.
[Board Member] We haveI think, under the statute we are supposed to get information from the Office of State Planning and Budgeting and the Department of Local Affairs, which I think that's the basis for the fiscal impact statement that we adopted.
Do you know whether the Office of State Planning and Budgeting solicited input from the Water Conservation Board? And if so, what the time line was on that? I'm frankly concerned, but if we were to put in something as specific as this based on that informationwhich may very well be correct informationI'm still concerned that that puts us in the position of having to take into account fiscal information that comes directly from any state agency to the Board after the statutory deadline. And it seems to me, that's a procedure kind of an institutional concern of the Ballot Title Board which we need to deal with.
....
[Board Member] Do you know whether the Office of State Planning and Budgeting solicited input from the Water Conservation Board?
[Petitioners' Counsel] ... I do not know who solicited whom for information.
The foregoing indicates that the fiscal impact information prepared by the CWCB was not properly before the Board. The Board, therefore, was not required to include that information in the summary.

IV.
For the foregoing reasons, we affirm the action of the Board.
NOTES
[1] For simplicity, we will hereafter refer to the ballot title and submission clause as the "submission clause."
[2] The proponents are Jerry Swingle and Richard G. Hamilton.
[3] The language is taken from the certificate issued by the Secretary of State containing the text of the initiative as filed on February 25, 1994.
[4] The title, submission clause, and summary, as set forth here, are taken from the Secretary of State's certificate containing the results of the board meeting on the motion for rehearing held on April 6, 1994.