In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY PERTAINING TO THE PROPOSED INITIATIVE ON PARENTAL CHOICE IN EDUCATION.

John S. OUTCELT, a registered elector of the State of Colorado, Petitioner,

v.

Gregory GOLYANSKY and Pamela Mann, Respondents,

and

Carole Pool, Rebecca Lennahan, and Richard Westfall, Title Setting Board.

No. 96SA78.

Supreme Court of Colorado, En Banc.

May 28, 1996.

Colorado Education Association, Martha R. Houser, Gregory J. Lawler, Sharyn E. Dreyer, Cathy L. Cooper, Bradley C. Bartels, Denver, for Petitioner.

Paul Grant, Parker, for Respondents.

Gale A. Norton, Attorney General, Timothy M. Tymkovich, Solicitor General, Maurice G. Knaizer, Deputy Attorney General, State Services Section, Denver, for Title Setting Board.

Chief Justice VOLLACK delivered the Opinion of the Court.

The petitioner, John S. Outcelt, a registered voter of the State of Colorado, challenges the title, ballot title and submission clause, summary, and fiscal impact statement prepared by the Title Setting Board (the Title Board) for a proposed constitutional amendment concerning parental choice in education.[1] The respondents in this case are Gregory Golyansky and Pamela Mann, the proponents of the initiative (the Proponents), and Carole Pool, Rebecca Lennahan, and Richard Westfall, of the Title Board.[2] The Title Board accepted the initiative submitted by the Proponents, including the title, ballot title and submission clause, summary, and fiscal impact statement. The Title Board subsequently denied the petitioner's motion for reconsideration. We approve the actions taken by the Title Board.

---

1. Our jurisdiction over this appeal is authorized by § 1–40–107(2), 1B C.R.S. (1995 Supp.).

2. The proposed constitutional amendment is provided in Appendix 1, and the proposed title, ballot title and submission clause, and summary are provided in Appendix 2.

## I.

The initiative would amend Article IX of the Colorado Constitution by adding a new section entitled "Section 17—Educational Choice." The initiative generally establishes the goal of empowering the greatest number of parents to choose the educational setting for their children. To accomplish this goal, the initiative establishes a school voucher plan which allows parents to exercise control over the per pupil operating revenues and other funds which are or would be expended for the purpose of educating their child or children in a public school. The initiative provides that any moneys expended to achieve the goal of choice in education are grants of aid to children through their parents, rather than grants to schools in which children are enrolled. The initiative also prohibits the State from expanding its regulatory authority over non-public schools as a result of the passage of the initiative. Finally, the initiative encourages the General Assembly to repeal laws and regulations that impede the ability of the public schools to provide a quality of education equal to or greater than that provided in non-public schools.

The Title Board conducted a hearing on the initiative on February 7, 1996. At the conclusion of the hearing, the Title Board fixed the title, including the ballot title and submission clause, summary, and fiscal impact statement. The petitioner filed his motion for rehearing on February 14, 1996, and the Title Board conducted a rehearing on February 21, 1996. At the conclusion of the rehearing, the Title Board denied the petitioner's motion for reconsideration of the title, ballot title and submission clause, summary, and fiscal impact statement. The petitioner subsequently filed his notice of appeal with this court.

## II.

■ The petitioner contends that the initiative violates the single-subject requirement contained in Article V of the Colorado Constitution. Article V of the Colorado Constitution provides registered electors of the state of Colorado the right to initiate constitutional amendments. Article V also includes a single-subject requirement for initiatives which states that:

> No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed. If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls.

Colo. Const. art. V, § 1(5.5). This single-subject requirement is designed to protect the voters from fraud and surprise, and to forbid the practice of combining together unrelated subjects in one initiative for the purpose of enlisting support for the entire initiative from advocates of each separate subject, and thereby securing the enactment of subjects that could not be enacted on their merits alone. *In re Proposed Amendment Entitled "Amend Tabor 32"*, 908 P.2d 125, 128 (Colo.1995).

■ Therefore, proponents of a measure may not include incongruous subjects in the same measure. § 1–40–106.5(1)(e)(I), 1B C.R.S. (1995 Supp.). The single-subject provision will not be violated, however, if the "initiative tends to effect or carry out one general object or purpose." *In re Proposed Amendment Entitled "Public Rights in Waters II"*, 898 P.2d 1076, 1079 (Colo.1995). The Title Board is vested with considerable discretion in setting the title, ballot title and submission clause, and summary. *In re Proposed Amendment Concerning Campaign and Political Finance*, 830 P.2d 954, 954 (Colo.1992). In reviewing actions of the Title Board, therefore, we must liberally construe the single-subject and title requirements for initiatives. *In re "Amend Tabor 32"*, 908 P.2d at 129.

In this case, the overarching subject of the initiative is parental choice of quality educational programs. Specifically, the initiative proposes the establishment of a voucher system which will allow parents control over all

or a substantial part of the per pupil revenue allocated for the public education of their children. The petitioner contends that subsections (8) and (9) of the initiative have purposes which are unrelated to the purpose stated in the title of the initiative. We disagree.

■ Subsection (8) of the initiative states:

Except as herein provided, neither the state nor any subdivision thereof, shall use this section to increase its regulatory role over the education of children in non-public schools beyond that exercised and existent on January 1, 1997.

The title fixed by the Title Board states that the initiative concerns "programs to assist parents in choosing educational opportunities for their children." The petitioner contends that this subsection addresses a different subject than the subject contained in the title. The petitioner bases this argument on his assertion that subsection (8) prohibits the state from expanding its regulatory authority over non-public schools. While this observation may prove accurate, it is noteworthy that subsection (8) expressly limits its ultimate impact by reference to the initiative. It is thus sufficiently connected with the subject of parental choice of quality educational programs to satisfy the single-subject requirement.

■ Subsection (9) states:

The General Assembly is encouraged to repeal those laws and/or regulations that are determined to be impediments to the ability of public schools to provide a quality of education equal to or greater than that provided in non-public schools.

The petitioner contends that this subsection varies in subject from the rest of the initiative. We disagree.

Subsection (9) contains a recommended course of legislative action—as other portions of the initiative do. While the reference to comparison between public and non-public schools may suggest issues that differ from the issues directly addressed by the other portions of the initiative, subsection (9) is sufficiently connected to the subject of parental choice of quality educational programs to satisfy the single-subject requirement.

Because the initiative does not violate the single-subject requirement, we approve the action of the Title Board.

## APPENDIX 1

Be It Enacted by the People of the State of Colorado:

Article IX of the constitution of the state of Colorado is amended BY THE ADDITION OF A NEW SECTION to read:

SECTION 17

## EDUCATIONAL CHOICE

(1) THE PEOPLE OF COLORADO, DESIRING TO IMPROVE THE QUALITY OF EDUCATION AVAILABLE TO ALL CHILDREN, ADOPT THIS SECTION HEREBY EMPOWERING THE GREATEST NUMBER OF PARENTS TO CHOOSE AMONG THE WIDEST ARRAY OF QUALITY EDUCATIONAL OPPORTUNITIES THEY DEEM BEST FOR THEIR CHILDREN.

(2) NOTWITHSTANDING ANY PROVISIONS OF SECTION 7 OF THIS ARTICLE, SECTION 34 OF ARTICLE V, SECTION 2 OF ARTICLE XI, THE GENERAL ASSEMBLY SHALL CREATE ONE OR MORE PROGRAMS TO ACCOMPLISH THE GOAL SPECIFIED IN SUBSECTION (1) OF THIS SECTION. ANY MONEYS EXPENDED IN PURSUIT OF THIS GOAL ARE GRANTS OF AID TO CHILDREN THROUGH THEIR PARENTS AND NOT TO SCHOOLS IN WHICH SUCH CHILDREN ARE ENROLLED.

(3) BEGINNING WITH THE 1997–1998 SCHOOL YEAR THE GENERAL ASSEMBLY SHALL HAVE IN PLACE A MECHANISM BY WHICH PARENTS SHALL BE ABLE TO EXERCISE CONTROL OVER ALL OR A SUBSTANTIAL PART OF THE PER PUPIL OPERATING REVENUES AND CATEGORICAL FUNDS WHICH ARE OR WOULD BE EXPENDED FOR THE PURPOSE OF EDUCATING THEIR CHILD/CHILDREN IN A PUBLIC SCHOOL. SAID MONEYS ARE TO BE USED EXCLUSIVELY FOR THE PURCHASE OF EDUCATIONAL SER-

VICES AND/OR SUPPLIES FROM PUBLIC OR NON–PUBLIC PROVIDERS SELECTED PERSONALLY BY PARENTS.

(4) IN ESTABLISHING ELIGIBILITY FOR PARTICIPATION IN ANY PROGRAM PURSUANT TO THIS SECTION, ECONOMICALLY DISADVANTAGED STUDENTS, AS DEFINED BY LAW, SHALL BE GIVEN THE HIGHEST PRIORITY.

(5) ANY PROGRAM CREATED PURSUANT TO THIS SECTION CANNOT INCREASE THE AMOUNT THE STATE OR SCHOOL DISTRICT MUST OTHERWISE EXPEND FOR ELEMENTARY AND SECONDARY EDUCATION, NOR CAN IT DIMINISH THE AMOUNT OF PER PUPIL OPERATING REVENUE FOR PUBLIC SCHOOLS.

(6) NO MONEYS MAY BE EXPENDED UNDER A PROGRAM ESTABLISHED PURSUANT TO THIS SECTION TO PURCHASE EDUCATIONAL SERVICES OR MATERIALS FROM ANY INSTITUTION OR INDIVIDUAL THAT:

(a) Discriminates on the basis of race, ethnicity, color or national origin.

(b) Advocates unlawful behavior or teaches hatred of any person or group on the basis of race, ethnicity, color, national origin, religion or gender.

(c) Knowingly employs a person convicted of any felony or crime involving moral turpitude, or any offense involving lewd or lascivious conduct, or any offense involving molestation or other abuses of a child or adult.

(d) As a parent, wishes to be paid for the educational services he or she provides to his or her own children in a home school environment.

(7) ANY PROGRAM ESTABLISHED PURSUANT TO THIS SECTION MUST INCLUDE:

(a) Greater financial support for children with handicapping and/or disabling conditions that would make them eligible for services as defined in the exceptional children's educational act or its successor.

(b) a provision to allow parents who choose to home school the ability to be reimbursed for all or part of the cost of materials and supplemental educational services as provided by law.

(8) EXCEPT AS HEREIN PROVIDED, NEITHER THE STATE NOR ANY SUBDIVISION THEREOF, SHALL USE THIS SECTION TO INCREASE ITS REGULATORY ROLE OVER THE EDUCATION OF CHILDREN IN NON–PUBLIC SCHOOLS BEYOND THAT EXERCISED AND EXISTENT ON JANUARY 1, 1997.

(9) THE GENERAL ASSEMBLY IS ENCOURAGED TO REPEAL THOSE LAWS AND/OR REGULATIONS THAT ARE DETERMINED TO BE IMPEDIMENTS TO THE ABILITY OF PUBLIC SCHOOLS TO PROVIDE A QUALITY OF EDUCATION EQUAL TO OR GREATER THAN THAT PROVIDED IN NON–PUBLIC SCHOOLS.

Proponent: Gregory Golyansky
1050 South Monaco Pkwy
Unit 70
Denver, CO 80224
303–341–2829
Fax: 361–9502
 Pamela Mann
12207 W Second Pl. # 7–305
Lakewood, CO 80228
303–763–8641

APPENDIX 2

**Proposed initiative on "Parental Choice in Education"**

The title as designated and fixed by the Board is as follows:

AN AMENDMENT TO THE COLORADO CONSTITUTION CONCERNING PROGRAMS TO ASSIST PARENTS IN CHOOSING EDUCATIONAL OPPORTUNITIES FOR THEIR CHILDREN, AND IN CONNECTION THEREWITH, REQUIRING THE GENERAL ASSEMBLY BY THE 1997–98 SCHOOL YEAR TO PUT IN PLACE A MECHANISM WHEREBY PARENTS SHALL EXERCISE CONTROL OVER ALL OR A SUBSTANTIAL PART OF THE PER PUPIL OPERATING REVENUES AND CATEGORICAL FUNDS

WHICH ARE OR WOULD BE EXPENDED FOR THE PURPOSE OF EDUCATING THEIR CHILDREN IN PUBLIC SCHOOLS FOR THE PURCHASE OF EDUCATIONAL SERVICES AND SUPPLIES, SPECIFYING THAT ANY MONEYS EXPENDED IN SUCH A PROGRAM OR ANY OTHER PROGRAM TO INCREASE EDUCATIONAL CHOICE ARE GRANTS OF AID TO CHILDREN THROUGH THEIR PARENTS AND NOT TO SCHOOLS, AND PROHIBITING ANY INCREASE IN THE AMOUNT THE STATE OR SCHOOL DISTRICT WOULD OTHERWISE EXPEND FOR EDUCATION OR ANY DECREASE IN THE AMOUNT OF PER PUPIL OPERATING REVENUE FOR PUBLIC SCHOOLS.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION CONCERNING PROGRAMS TO ASSIST PARENTS IN CHOOSING EDUCATIONAL OPPORTUNITIES FOR THEIR CHILDREN, AND IN CONNECTION THEREWITH, REQUIRING THE GENERAL ASSEMBLY BY THE 1997–98 SCHOOL YEAR TO PUT IN PLACE A MECHANISM WHEREBY PARENTS SHALL EXERCISE CONTROL OVER ALL OR A SUBSTANTIAL PART OF THE PER PUPIL OPERATING REVENUES AND CATEGORICAL FUNDS WHICH ARE OR WOULD BE EXPENDED FOR THE PURPOSE OF EDUCATING THEIR CHILDREN IN PUBLIC SCHOOLS FOR THE PURCHASE OF EDUCATIONAL SERVICES AND SUPPLIES, SPECIFYING THAT ANY MONEYS EXPENDED IN SUCH A PROGRAM OR ANY OTHER PROGRAM TO INCREASE EDUCATIONAL CHOICE ARE GRANTS OF AID TO CHILDREN THROUGH THEIR PARENTS AND NOT TO SCHOOLS, AND PROHIBITING ANY INCREASE IN THE AMOUNT THE STATE OR SCHOOL DISTRICT WOULD OTHERWISE EXPEND FOR EDUCATION OR ANY DECREASE IN THE AMOUNT OF PER PUPIL OPERATING REVENUE FOR PUBLIC SCHOOLS?

The summary prepared by the Board is as follows:

This measure directs the general assembly to create one or more programs to accomplish the goal of permitting the greatest number of parents to choose among a wide array of quality educational opportunities they deem best for their children. In pursuit of that goal, the general assembly is required, by the 1997–98 school year, to have in place a mechanism by which parents are able to exercise control over all or a substantial part of the per pupil operating revenues and categorical funds which are or would be expended for educating their children in public schools. Such moneys are to be used to purchase educational services and supplies from providers personally selected by parents. Any program created under this measure cannot increase the amount that the state or a school district would otherwise spend for education, nor may any such program diminish the per pupil operating revenue for public schools.

Under this measure, any program created shall give the highest priority for eligibility to economically disadvantaged students, and must include greater financial support for children with handicapping or disabling conditions that would make them eligible for services as defined in the "Exceptional Children's Educational Act". No moneys may be expended under a program created pursuant to this measure to purchase educational services or materials from an institution or an individual that discriminates on the basis of race, ethnicity, color, or national origin, that advocates unlawful behavior or teaches hatred of any person or group on the basis of race, ethnicity, color, national origin, religion, or gender, that knowingly employs a person convicted of any felony or crime involving moral turpitude, or any offense involving lewd or lascivious conduct, or involving molestation or other abuses of a child or adult. While this measure would not allow a parent to be paid for educational services he or she provides to his or her own children in a home school environment, any program established under this measure shall permit parents who

home-school their children to be reimbursed for all or part of the cost of materials and supplemental educational services.

Under this measure, neither the state nor any subdivision thereof shall use this measure to increase its regulatory role over education of children in non-public schools beyond that exercised and existent on January 1, 1997. The measure encourages the general assembly to repeal laws and regulations that impede the ability of public schools to provide a quality of education equal to or greater than that provided in non-public schools.

The fiscal impact of this measure is indeterminate.

Hearing 2/7/96
Adjourned 4:28 p.m.

2/21/96 Rehearing—Denied
Adjourned 3:30 p.m.