917 P.2d 1277 (1996)
In the Matter of the TITLE, BALLOT TITLE, SUBMISSION CLAUSE, AND SUMMARY ADOPTED MARCH 20, 1996, BY THE TITLE BOARD PERTAINING TO PROPOSED INITIATIVE "1996-6".
Richard D. MACRAVEY, Buford F. Rice, James F. Geyler, Fred V. Kroeger, and Rodney F. Kuharich, Petitioners,
v.
T. Philip HUFFORD and Richard G. Hamilton, Respondents, and
Title Board; and Honorable Victoria Buckley, Richard A. Westfall, and Rebecca Lennahan, as members of said board, Respondents.
No. 96SA120.
Supreme Court of Colorado, En Banc.
June 10, 1996.
*1278 Fairfield and Woods, P.C., Stephen H. Leonhardt, Jacalyn W. Peter, David L. Joeris, Denver, for Petitioners Richard D. Macravey, James F. Geyler, Fred V. Kroeger and Rodney F. Kuharich.
Carlson, Hammond & Paddock, William A. Paddock, Melanie Kopperud Backes, Denver, for Buford F. Rice.
Richard G. Hamilton, Pro Se.
Gale Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Maurice G. Knaizer, Deputy Attorney General, Denver, for Title Board.
PER CURIAM.
The petitioners are registered electors who brought this original proceeding pursuant to section 1-40-107(2), 1B C.R.S. (1995 Supp.), to review the action taken by the initiative title setting board (the Board) in fixing a title, ballot title and submission clause, and summary (collectively, "titles and summary")[1] for a proposed constitutional amendment designated "1996-6" (the Initiative). We hold that the Initiative does not violate the single-subject requirement applicable to initiatives under Article V, Section 1(5.5) of the Colorado Constitution, and that the titles and summary are not unfair or misleading. We therefore approve the action of the Board.

I
The Initiative seeks to add two new paragraphs to Article XVI, Section 5 of the Colorado Constitution.[2] The paragraph numbered (1) currently appears in the Colorado Constitution; and paragraphs (2) and (3) are new material which would be added by the Initiative. Paragraph (2) mandates the *1279 adoption and defense of a "public trust doctrine" regarding Colorado waters. Paragraph (3) provides for the granting or assigning of present or future water use rights to the public, and to any watercourse.
The petitioners argue that the Board's action should be set aside because: (1) the Initiative encompasses more than one subject; and (2) the titles and summary are unfair and misleading because they do not disclose that a "public trust doctrine" is "a legal term undefined either in the Initiative or in current Colorado law."

II
The petitioners first assert that the Board should not have set the titles and summary because the Initiative encompasses more than one subject. We disagree.
The single-subject requirement for initiatives is contained in Article V, Section 1(5.5) of the Colorado Constitution, which provides:
No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure shall be void only as to so much thereof as shall not be so expressed. If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls.[3]
In anticipation of the amendment's adoption, the General Assembly enacted legislation to explain its rationale for proposing the single-subject amendment and to define the scope and purpose of imposing the single-subject requirement on initiated and referred measures. See § 1-40-106.5, 1B C.R.S. (1995 Supp.). The single-subject requirement limits the scope of an initiative to a single subject which must be clearly expressed in its title. § 1-40-106.5(1)(a). Moreover, "in setting titles pursuant to section 1(5.5) of article V, the initiative title setting review board created in section 1-40-106 should apply judicial decisions construing the constitutional single subject requirement for bills and should follow the same rules employed by the general assembly in considering titles for bills." § 1-40-106.5(3).
As we said in In re Proposed Initiative "Public Rights in Waters II", 898 P.2d 1076, 1078 (Colo.1995) (hereinafter "Public Rights in Waters II"):
The requirement that an initiative be limited to a single subject is intended to ensure that each proposal depends upon its own merits for passage. § 1-40-106.5(1)(e)(I), 1B C.R.S. (1994 Supp.); see also In re House Bill No. 1353, 738 P.2d 371, 372 (Colo.1987) (interpreting the single subject requirement for bills). In furtherance of this purpose, the single subject requirement forbids the joining of "incongruous subjects in the same measure." § 1-40-106.5(1)(e)(I).
In order to constitute more than one subject under our caselaw pertaining to bills, the text of the measure must relate to more than one subject and it must have *1280 at least two distinct and separate purposes which are not dependent upon or connected with each other. Thus, if the initiative tends to effect or to carry out one general object or purpose, it is a single subject under the law.
898 P.2d at 1078 (citations omitted). In invalidating a bill for violation of the single-subject requirement for bills, we held that, in order to satisfy the single-subject requirement, the subject matter of a bill must be "necessarily or properly connected" rather than "disconnected or incongruous." In re House Bill No. 1353, 738 P.2d 371, 374 (Colo. 1987).
In addition, the Board "is vested with considerable discretion in setting the title, ballot title and submission clause, and summary. In reviewing actions of the Title Board, therefore, we must liberally construe the single-subject requirements for initiatives." In re Proposed Initiative on Parental Choice in Educ., 917 P.2d 292, 294 (1996) (citation omitted). Under the foregoing analysis, we conclude that the Initiative does not violate the single-subject requirement and therefore it was permissible for the Board to set a title and summary for the Initiative.
The Board asserts that "Public Rights in Waters II", 898 P.2d at 1077, governs the outcome in this case. In "Public Rights in Waters II", 898 P.2d at 1080, we held that an earlier version of the present Initiative did violate the single-subject requirement. In describing the initiative in the prior case, we stated:
The Initiative seeks to add four new paragraphs to Article XVI, Section 5 of the Colorado Constitution. The paragraph numbered (1) currently appears in the Colorado Constitution; paragraphs (2) through (5) are new material which would be added by the Initiative. Paragraph (2) mandates the adoption and defense of a "strong public trust doctrine" regarding Colorado waters. Paragraph (3) requires water conservancy and water conservation districts to hold elections to change their boundaries or discontinue their existence. Paragraph (4) requires the same districts to hold elections for directors. Paragraph (5), like paragraph (2), concerns the public trust doctrine and describes dedication of water right use to the public.
898 P.2d at 1077 (footnote omitted). Because paragraphs (2) and (3) of the Initiative in this case are similar (but not identical) to paragraphs (2) and (5) of the initiative in "Public Rights in Waters II", see id. at 1077 n. 1, the Board argues that we have already effectively held that paragraphs (2) and (3) should be considered to concern a single subject, i.e., the public trust doctrine.
The basis for the decision in "Public Rights in Waters II" was that "[n]o necessary connection exists between the two district election requirements paragraphs [(3) and (4) ] and the two public trust water rights paragraphs [(2) and (5) ]." Id. at 1080. The initiative thus violated the single-subject requirement. Id. The district election requirements paragraphs have been eliminated in the present Initiative.
Despite this deletion, the petitioners claim that the Initiative contains two separate and distinct subjects. While conceding that the existence of multiple subjects may not be as facially obvious as it was in "Public Rights in Waters II", the petitioners identify two unrelated topics. According to the petitioners, paragraph (2) of the Initiative concerns a "public trust doctrine," while paragraph (3) authorizes the assignment of water rights to the public and to any watercourse. In reaching this conclusion, the petitioners attempt to define "public trust doctrine" by using the testimony of the proponents of the measure and judicial decisions of other jurisdictions. E.g., Illinois Cent. R. Co. v. Illinois, 146 U.S. 387, 13 S.Ct. 110, 36 L.Ed. 1018 (1892); National Audubon Soc'y v. Superior Court, 33 Cal.3d 419, 189 Cal.Rptr. 346, 658 P.2d 709 (1983). They also interpret the assignment of water rights provision as an attempt to overhaul the state's instream flow program. See § 37-92-102(3), 15 C.R.S. (1990 & 1995 Supp.).
The petitioners in In re Proposed Initiative on Water Rights, 877 P.2d 321 (Colo. *1281 1994) (involving another precursor to the present Initiative), complained that the titles and summary set by the Board did not accurately represent the initiative because they did not contain a definition of the phrase "strong public trust doctrine." In rejecting this contention, we pointed out that the initiative itself did not contain a definition of "strong public trust doctrine," and "such a definition must await future construction and cannot appropriately be included in the title or submission clause." Id. at 327.
In a similar way, the precise meaning of a "public trust" doctrine in the instant Initiative must await future construction. Paragraph (2) of the Initiative, however, states that "Colorado shall adopt, and defend, a public trust doctrine to protect the public's rights and ownerships in and of the waters in Colorado, and to protect the natural environment." (Emphasis added.) Paragraph (3) provides that "[p]resent or future water use rights may be granted or assigned to the public, and to any watercourse...." It makes no reference to instream flow rights and neither does the title. Acceptance of the petitioners' argument would require us to engage in an interpretation of the Initiative which is beyond the limited role we exercise in this type of case. We cannot speculate as to the effect this Initiative may have on other constitutional provisions or statutes.
The title set by the Board, which described the overall subject of the Initiative as "[a]n amendment to the Colorado Constitution concerning the public's interests in state waters" succeeds in encompassing both paragraphs (2) and (3) of the Initiative. Moreover, "the public's interests in state waters" is sufficiently narrow and sufficiently connected with both a "public trust doctrine" and the assignment of water use rights to the public or a watercourse, to satisfy the single-subject requirement. In re Proposed Initiative on Parental Choice in Educ., 917 P.2d at 294. We therefore reject the petitioners' contention that the Board's title fails to clearly express a single subject.

III
The petitioners assert that the Board's phrase "public's interests in state waters" is misleading, confusing, subjective, and ambiguous; and constitutes a "catch phrase" likely to create prejudice in favor of the measure. We disagree.
The petitioners' legal argument consists mainly of comparing the title phrase to their hypothetical constructions of paragraphs (2) and (3) and thereby finding the title misleading and confusing. The petitioners' interpretations are not the only ones permissible, however, and given the testimony before the Board, and the wording of the Initiative itself, we conclude that the title and the phrase "public's interests in state waters" is well within the Board's discretion in setting a title. In re Proposed Initiative on Parental Choice in Educ., 917 P.2d at 294.
Nor is "public's interests in state waters" an impermissible catch phrase. "A `catch phrase' consists of `words which could form the basis of a slogan for use by those who expect to carry out a campaign for or against an initiated constitutional amendment.' " In re Proposed Initiative Designated "Governmental Business", 875 P.2d 871, 876 (Colo.1994) (quoting In re Proposed Initiative on Casino Gaming, 649 P.2d 303, 308 (Colo.1982)). The existence of a slogan or catch phrase is determined in the context of contemporary political debate. In re Workers Comp Initiative, 850 P.2d 144, 147 (Colo. 1993). The petitioners fail to provide any evidence that "public's interests in state waters" constitutes a catch phrase beyond their bare assertion that it does. We therefore conclude that the Board's title does not contain an impermissible catch phrase. In re "Amend Tabor No. 32", 908 P.2d 125, 130 (Colo.1995).

IV
The petitioners' final challenge to the titles and summary is that they are misleading because they fail to disclose that a "public trust doctrine" is undefined. We held that the phrase "strong public trust doctrine" need not be defined in the title or submission clause since it was undefined in the initiative *1282 itself, In re Proposed Initiative on Water Rights, 877 P.2d at 327, just as "public trust doctrine" is not defined in the present Initiative. However, while the Board could have stated that the phrase was undefined, its failure to do so is not fatal.
The Board is under no duty to define vague terms, even if the proponents intend "the language to remain vague so that the courts could interpret its application...." In re Proposed Initiated Constitutional Amendment Concerning Unsafe Workplace Env't, 830 P.2d 1031, 1034 (Colo.1992). The Board's decision not to define the phrase is certainly within its discretion and we will not disapprove it.
Accordingly, we approve the action of the Board.
HOBBS, J., does not participate.

APPENDIX

Proposed Initiative "1996-6"
The Title as designated and fixed by the Board is as follows:
AN AMENDMENT TO THE COLORADO CONSTITUTION CONCERNING THE PUBLIC'S INTERESTS IN STATE WATERS, AND, IN CONNECTION THEREWITH, ADOPTING A PUBLIC TRUST DOCTRINE TO PROTECT THE PUBLIC'S RIGHTS AND OWNERSHIPS IN AN OF SUCH WATER AND TO PROTECT THE NATURAL ENVIRONMENT; PROVIDING THAT WATER USE RIGHTS MAY BE GRANTED OR ASSIGNED TO THE PUBLIC AND TO ANY WATERCOURSE WITHOUT HIDRANCE FROM A GOVERNMENTAL OR QUASI-GOVERNMENTAL ENTITY; AND REQUIRING THE STATE OF COLORADO TO DEFEND SUCH PUBLIC OWNERSHIPS OF WATER FROM TRANSFER FROM THE PUBLIC OWNERSHIP AND FROM TRANSFER FROM THE WATERCOURSE TO WHICH THE WATER RIGHT WAS PLEDGED.
The ballot title and submission clause as designated and fixed by the Board is as follows:
SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION CONCERNING THE PUBLIC'S INTEREST IN STATE WATERS, AND, IN CONNECTION THEREWITH, ADOPTING A PUBLIC TRUST DOCTRINE TO PROTECT THE PUBLIC'S RIGHTS AND OWNERSHIPS IN AND OF SUCH WATER AND TO PROTECT THE NATURAL ENVIRONMENT; PROVIDING THAT WATER USE RIGHTS MAY BE GRANTED OR ASSIGNED TO THE PUBLIC AND TO ANY WATERCOURSE WITHOUT HINDRANCE FROM A GOVERNMENTAL OR QUASI-GOVERNMENTAL ENTITY; AND REQUIRING THE STATE OF COLORADO TO DEFEND SUCH PUBLIC OWNERSHIPS OF WATER FROM TRANSFER FROM THE PUBLIC OWNERSHIP AND FROM TRANSFER FROM THE WATERCOURSE TO WHICH THE WATER RIGHT WAS PLEDGED?
The summary as prepared by the Board is as follows:
This measure requires the state of Colorado to adopt and defend a public trust doctrine, for the stated purpose of protecting the natural environment and the public's rights and ownership in state waters which are subject to appropriation under the state constitution.
The measure authorizes grants and assignments of present or future water use rights to the public or a watercourse, and prohibits governmental and quasi-governmental entities from hindering such assignments.
The measure requires the state of Colorado to defend against attempts to transfer these public ownerships of water from the public ownership and from the watercourse to which the water right was pledged.
This measure would have a substantial fiscal impact on the state and local governments.
*1283 The Office of the State Engineer in the Division of Water Resources estimates that it will need 49 additional full-time employees and $2.6 million annually to implement the measure. The Office indicates that its estimate is based on an imprecise understanding of what its responsibilities would be, such as which public rights it would have to defend, whether the defense of the public's rights would require the defense of multiple interests simultaneously, and whether its water administrators would have to administer water under the appropriation system and the public trust system simultaneously.
The Colorado Water Conservation Board estimates that it will need an additional 11 full-time employees and $8.7 million annually to implement the measure, including litigation and additional stream gauges for monitoring. Policy litigation, including litigation needed to define and implement a public trust doctrine, could cost an additional $1 million. The Board's estimate is subject to similar uncertainties about what its responsibilities would be.
The department of local affairs estimates that the amendment will have a net fiscal impact of between $2.28 billion and $3.26 billion, assuming the public trust doctrine is applied only on a prospective basis. This amount represents the additional cost for local governments to provide water to a growing population, assuming that nontributary ground water would have to be used and that the cost of surface water rights would increase. If the doctrine is retroactively applied to existing water rights, there will be a similar fiscal impact to replace existing water supplies. The estimate does not include the potential liability of the state or the litigation costs which would arise if the implementation of the public trust doctrine is considered a "taking" under amendment V of the U.S. Constitution.
NOTES
[1] The titles and summary set by the Board are attached as an appendix to this opinion.
[2] The Initiative provides as follows:

Be it enacted by the people of the State of Colorado that Section 5 of Article XVI of the Constitution of the State of Colorado is amended to read:
Article XVI Section 5 Water of Streams Public Property.
(1) The water of every natural stream, not heretofore appropriated within the state of Colorado is hereby declared to be the property of the public, and the same is dedicated to the use of the people of the state, subject to appropriation as hereinafter provided.
(2) ON AND AFTER JANUARY 1, 1997, THE STATE OF COLORADO SHALL ADOPT, AND DEFEND, A PUBLIC TRUST DOCTRINE TO PROTECT THE PUBLIC'S RIGHTS AND OWNERSHIPS IN AND OF THE WATERS IN COLORADO, AND TO PROTECT THE NATURAL ENVIRONMENT.
(3) PRESENT OR FUTURE WATER USE RIGHTS MAY BE GRANTED OR ASSIGNED TO THE PUBLIC, AND TO ANY WATERCOURSE, WITHOUT HINDRANCE FROM A GOVERNMENTAL OR QUASI-GOVERNMENTAL ENTITY. THE STATE OF COLORADO SHALL DEFEND ALL PUBLIC OWNERSHIP'S [sic] OF WATER FROM TRANSFER FROM THE PUBLIC OWNERSHIP, AND FROM TRANSFER FROM THE WATERCOURSE TO WHICH THAT WATER RIGHT WAS PLEDGED.
The material in all capital letters is the new material the Initiative seeks to add.
[3] This constitutional amendment was presented to the voters by the General Assembly as Referendum A on the 1994 general election ballot. It was approved and became effective upon proclamation by the Governor. See Senate Concurrent Resolution 93-4, 1993 Colo.Sess.Laws 2152.