In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, FOR 2007–2008, # 17 (New State Department and Elected Board for Environmental Conservation).

Douglas Kemper and Stuart A. Sanderson, Registered Electors of the State of Colorado, Objectors, Petitioners

v.

Richard G. Hamilton and Phil Doe, Proponents, Respondents.

and

William A. Hobbs, Daniel Cartin, and Daniel Domenico, Title Board.

No. 07SA201.

Supreme Court of Colorado, En Banc.

Nov. 19, 2007.

As Modified on Denial of Rehearing Dec. 17, 2007.

Burns, Figa & Will, P.C., Stephen H. Leonhardt, Alix L. Joseph, Peter F. Waltz, Greenwood Village, Colorado Attorneys for Petitioners.

Richard G. Hamilton, Pro Se, Fairplay, Colorado.

Phil Doe, Pro Se, Littleton, Colorado.

John W. Suthers, Attorney General, Maurice G. Knaizer, Deputy Attorney General, Department of Law, State Services Section, Denver, Colorado, Attorneys for Title Board.

Justice HOBBS delivered the Opinion of the Court.

In this appeal pursuant to section 1–40–107(2), C.R.S. (2007), two registered electors, Douglas Kemper and Stuart Sanderson (collectively, "Kemper"), challenge the action of the Title Board in setting the title, ballot title, and submission clause ("titles") for proposed Initiative 2007–2008 # 17 (unofficially captioned by legislative staff, for tracking purposes, "New State Department and Elect-

ed Board for Public Resource Conservation").[1]

The initiative's proponents contend that the measure proposes only the creation of a new Colorado Department of Environmental Conservation with a mission of "conservation stewardship." Kemper asserts that the measure goes beyond establishing a new environmental department and supplying it with a mission statement for conservation stewardship; instead, the initiative, in sections 2 and 7, sets forth a mandatory public trust standard for agency decision-making whereby conflicts between "economic interest" and "public ownership and public conservation values in lands, waters, public resources, and wildlife," must always be resolved in favor of "public ownerships and public values."

The initiative's proponents have submitted a written statement characterizing their own testimony before the Title Board as "definitively and succinctly stat[ing] that there has been no attempt in the article XXX proposal to establish a public trust doctrine."[2] However, Kemper contends that the language of the measure does, in fact, propose a public trust standard conjoined with the creation of a new environmental department, thereby creating a multiple subject violation contrary to our decision in *In re Title, Ballot Title & Submission Clause, & Summary Pertaining to a Proposed Initiative "Public Rights in Waters II"* ("*Waters II*"), 898 P.2d 1076, 1078–79 (Colo.1995).

Thus, a central point of contention in this appeal is whether the initiative contains a proposal to establish a public trust standard for agency decision-making. We agree with Kemper that the initiative contains the additional subject of a public trust standard, not simply the subject of a new environmental department with a conservation stewardship mission. We conclude that our decision in *Waters II* controls our decision in this case

---

1. The text of the titles is attached as Appendix A. The text of Initiative 2007–2008 # 17 is attached as Appendix B.

2. Response to Motion to Rehear the Title Set by the Title Setting Board for the Initiative to Add Article XXX–Establishment of Colorado Department of Environmental Conservation, June 20, 2007, at 2. ("The contention by petitioners to

rehear that suggests that the measure is an attempt, in a surreptitious manner, to install a public trust doctrine into the Colorado Constitution, is in direct conflict with testimony provided at the Title Hearing, June 6th where testimony specifically stated there was, in no manner, any attempt to promote a public trust doctrine.").

and requires that the public trust standard proposed in this initiative be made in a single subject initiative. Accordingly, we reverse the action of the Title Board and remand this case to it with directions to strike the titles and return the initiative to its proponents.[3]

## I.

### Initiative # 17's Proposal

On June 6, 2007, the Title Board conducted a public meeting on Initiative 2007–2008 # 17, pursuant to section 1–40–106(1), C.R.S. (2007). It designated and fixed a title, ballot title, and submission clause for the initiative. Kemper filed a Motion for Rehearing. At a subsequent public meeting, the Title Board denied Kemper's motion, whereupon Kemper initiated this original proceeding for review of the Title Board's action.

The initiative proposes ten single-spaced pages of new text, adding section XXX to the Colorado Constitution. It contains eleven provisions applicable to numerous agencies that are currently assigned to the Department of Natural Resources, the Department of Health and Environment, and the Governor's Office. The initiative would transfer to the new Department of Environmental Conservation the following existing programs, divisions, boards, and commissions: Colorado Natural Areas Program; Colorado Water Conservation Board; Colorado Division of Forestry; Colorado Division of State Parks; Colorado Water Quality Control Division; Colorado Division of Wildlife; Colorado Land Use Commission; Colorado Captive Wildlife and Alternative Livestock Board; the State Board of Land Commissioners; Great Outdoors Colorado Program; State Board of the Great Outdoors Colorado Trust Fund; Hazardous Waste Commission; Colorado Land Use Commission; Colorado Natural Areas Council; Colorado Board of Parks and Outdoor Recreation; Pollution Prevention Advisory Board; Colorado Water Conservation Board; Colorado Water Quality Control

Commission; Wildlands and Urban Interface Wildlife Working Group; Colorado Wildlife Commission; and Colorado Joint Review Process. The initiative also includes language that would insert a public trust standard into agency decision-making.

## II.

We agree with Kemper that the initiative contains the additional subject of a public trust standard, not simply the subject of a new environmental department with a conservation stewardship mission. We conclude that our decision in *Waters II* controls our decision in this case and requires that the public trust standard contained in the language of this initiative be proposed in a single subject initiative.

### A.

### Standard of Review

■ In 1994, the Colorado voters adopted the single subject matter requirement of article V, section 1(5.5). This constitutional requirement and the Title Board's enabling statute, § 1–40–106.5(1)(a), C.R.S. (2007), provide that a proposed initiative must be "clearly expressed." The Constitution and the statute prohibit initiatives from containing two or more separate and discrete subjects that are not dependent upon or necessarily connected with each other. *Waters II*, 898 P.2d 1076, 1078–79; *see also In re Title, Ballot Title & Submission Clause, & Summary for Proposed Initiative 2001–02 # 43*, 46 P.3d 438, 441–42 (Colo.2002).

■ Further, one of the purposes of the single subject requirement is to apprise voters of the subject of each measure, so that surreptitious measures that could result in voter surprise or fraud are not placed on the ballot. *Id.* at 441; *see also* § 1–40–106.5(1)(e)(II), C.R.S. (2007). At first glance, the concept of a single subject appears straightforward; however, an initiative with

---

3. In view of our holding reversing the Title Board's action based on the single subject requirement, we do not address Kemper's contentions that there are additional subjects, that the titles are misleading, and that the initiative employs an impermissible catch phrase. *See In re*

*Title, Ballot Title & Submission Clause, & Summary for 2001–02 # 43*, 46 P.3d 438, 440 (Colo. 2002) ("Because we conclude that [the initiative] contains multiple subjects, we do not consider whether the titles set by the Title Board conform to the requirements. . . .").

multiple subjects may be improperly offered as a single subject by stating the subject in broad terms. *In re Title, Ballot Title & Submission Clause, & Summary 2005–2006 # 55*, 138 P.3d 273, 274 (Colo.2006).

▆▆▆ Implementing provisions that are directly tied to an initiative's central focus are not separate subjects. *In re Title, Ballot Title & Submission Clause, & Summary for 1999–2000 # 258(A)*, 4 P.3d 1094, 1097 (Colo. 2000). While we do not determine an initiative's efficacy, construction, or future application, we must examine the proposal sufficiently to enable review of the Title Board's action. *Id.* at 1097–98. We apply the general rules of statutory construction and accord the language of the measure its plain meaning. *In re Title, Ballot Title & Submission Clause, & Summary for 2005–2006 # 75*, 138 P.3d 267, 271 (Colo.2006).

## B.

### This Initiative Proposes a Public Trust Standard, Not Simply a New Environmental Department with a Conservation Stewardship Mission

▆▆▆ At first glance, this initiative may seem to propose only the creation of an environmental conservation department with a conservation stewardship mission. However, a plain reading of the initiative's language also reveals the inclusion of a public trust standard for agency decision-making.

Section 7 of the initiative assigns to the new environmental department a priority to "steward and protect the public ownership and public conservation values in lands, waters, public resources, and wildlife." Standing alone, this language can be viewed as merely assigning a mission to the new department. However, additional language in section 7 and section 2 of the initiative creates a new and mandatory public trust standard for agency decision-making applicable to existing divisions, programs, boards, and commissions transferred from the Department of Natural Resources, the Department of Health and the Environment, and the Governor's Office.

First, the initiative utilizes the words "[t]rust responsibilities" in the lead lines of section 7. After stating the new department's mission, section 7 sets forth a mandatory public trust standard, whereby conflicts between "economic interest" and "public ownership and public conservation values in lands, waters, public resources, and wildlife" shall be resolved in favor of "public ownerships and public values."

Section 7 enunciates this new public trust standard as follows:

*Trust responsibilities* **of the Colorado department of environmental conservation.** (1) The Colorado Department of Environmental Conservation is created by the people of the state of Colorado to ensure public resource conservation stewardship, and in connection therewith, the Colorado Department of Environmental Conservation, and the elected members of the Board of Commissioners of the Colorado Department of Environmental Conservation, shall have, as priority, the responsibility to steward and protect the public ownership and public conservation values in lands, waters, public resources, and wildlife. *Conflict between economic interest and conservation stewardship responsibilities to, and for, the public's resources and resource conservation values shall be resolved in favor of public ownerships and public values.*

(emphasis added).

Section 2 of the initiative mandates that, in the event of conflict with other constitutional provisions, the provisions of the new article XXX preempt existing constitutional provisions. Specifically, section 2 states:

*Should conflict with other Colorado constitutional provisions arise hereafter, provisions within Article XXX shall be held dominant over other, previous constitutional provisions.*

(emphasis added).

Thus, in providing for the resolution of economic interest conflicts in favor of public ownerships and public values in every instance, sections 2 and 7 mandate a public trust standard. This language goes beyond establishing a mission of conservation stewardship for the new environmental depart-

ment into constitutionally mandating a controlling legal standard.

## C.

### Our Decision in *Waters II* Controls

The public trust standard this initiative proposes is a variation on a subject we have addressed in prior ballot title cases. In *Waters II*, the proposed public trust would have required the state to "adopt and defend a strong public trust doctrine regarding the public's rights and ownerships in and of the waters in Colorado." 898 P.2d at 1077 n. 1. Because the public trust standard was joined with a proposal for reforming water district rules, we determined that the initiative contained more than a single subject in violation of the single subject requirement of article V, section 1(5.5) of the Colorado Constitution.

Just as the initiative in *Waters II* improperly paired the reformation of water district rules with the separate and discrete subject of the creation of a public trust standard, so too does this initiative improperly pair the creation of a new environmental department with the separate and discrete subject of the creation of a public trust standard.

In a subsequent case, we upheld the action of the Title Board in setting the titles when the subject of creating a public trust standard was not paired with a separate and discrete subject in a proposed initiative. *See In re Title, Ballot Title & Submission Clause, & Summary 1996 # 6 ("Hufford")*, 917 P.2d 1277 (Colo.1996). In *Hufford*, the initiative at issue proposed that the "State of Colorado shall adopt, and defend, a public trust doctrine to protect the public's rights and ownerships in and of the waters in Colorado, and to protect the natural environment." 917 P.2d at 1278 n. 2.

Additionally, prior to the passage of the single subject provision, in *In re Title, Ballot Title & Submission Clause, & Summary for Proposed Initiative on Water Rights ("Swingle")*, 877 P.2d 321 (Colo. 1994), the initiative we reviewed proposed the public trust language later utilized in the *Hufford* and *Waters II* initiatives, and included a provision requiring that "the State of Colorado protect and defend the publics' [sic] interests in wa-

ters from unwarranted or otherwise narrow definitions of its waters as private property." 877 P.2d at 324.

■ The public trust language of the initiative now before us only recasts the words of the prior initiatives we considered in *Waters II, Hufford*, and *Swingle*. The operative precepts "trust responsibility" for "public ownerships" and "public values" in "water" is the same in this case as in *Waters II, Hufford*, and *Swingle*. This initiative adds "lands, public resources, and wildlife" to the trust responsibility and, most significantly, enunciates a mandatory constitutionally preemptive legal standard whereby conflicts between "economic interest" and "public ownership and public conservation values in lands, waters, public resources, and wildlife," shall be resolved in favor of "public ownerships and public values."

In this initiative, the public trust standard subject is paired with the subject of reorganizing existing natural resource and environmental protection divisions, programs, boards, and commissions, and these are separate and discrete subjects that are not dependent upon or necessarily connected with each other. Similarly, we held in *Waters II*, 898 P.2d 1076, that the reform of water district rules and the creation of a public trust standard were separate and discrete subjects that were not dependent upon or necessarily connected with each other.

■ An initiative that joins multiple subjects poses the danger of voter surprise and fraud occasioned by the inadvertent passage of a surreptitious provision coiled up in the folds of a complex initiative. *In re Title, Ballot Title & Submission Clause, & Summary for 2001–02 # 43*, 46 P.3d at 442. We must examine sufficiently an initiative's central theme to determine whether it contains hidden purposes under a broad theme. *In re Proposed Initiative for 2005–2006 # 55*, 138 P.3d 273, 279 (Colo.1995).

The initiative before us today is complex and subtly worded. However, just as "water" was too broad a theme in *Waters II*, 898 P.2d at 1080, to unite multiple subjects into a single subject, so do "environmental conservation" and "conservation stewardship" fail

to suffice here. Despite the statement of the initiative's proponents that the initiative simply creates a new environmental department with a conservation stewardship mission, a plain reading of the initiative reveals that it superimposes onto existing constitutional and statutory provisions the duty to resolve every conflict between "economic interests" and "public ownerships and public values" in favor of "public ownerships and public values."

The public trust standard contained in this initiative is coiled in the folds of the measure, contrary to our holding in *Waters II*, 898 P.2d at 1080. What appears to be a simple proposal to reorganize and consolidate existing environmental protection and natural resource conservation agencies for the purpose of efficiency and carrying out their assigned responsibilities is conjoined with the creation of a public trust standard, in violation of the single subject requirement of article V, section 1(5.5) of the Colorado Constitution.

### III.

Accordingly, we reverse the Board's action and remand this matter with directions to strike the titles and return the initiative to its proponents.

Justice EID dissents, and Justice RICE and Justice COATS join in the dissent.

Justice EID, dissenting.

Today the majority invalidates, under the single subject requirement,[1] proposed Initiative 2007–2008 No. 17, which would create a new state department of environmental conservation. The new department's mission would be defined as "ensur[ing] public resource conservation stewardship." Maj. op. at 883 (Appendix B). According to the majority, the initiative's proponents can create a new department, but they cannot—without running afoul of the single subject requirement—give that department a mission. In my view, the single subject requirement does

not put the initiative's proponents to such a choice. That requirement is easily satisfied in this case because the new department's "conservation stewardship" mission is sufficiently connected to the creation of the department itself. Because the majority finds otherwise, I respectfully dissent from its opinion.

### I.

The majority makes two fundamental mistakes. First, it misinterprets the text of proposed Initiative 2007–2008 No. 17 to find that it imposes a "public trust" doctrine on Colorado natural resources law. Yet on its face, the initiative merely describes the "conservation stewardship" mission that the proposed new department would carry out. Second, the majority finds that the initiative fails under our precedent of *Waters II* because there is an insufficient connection between the new department and its mission of "conservation stewardship." There is a sufficient connection here, however, because the former will carry out the latter. In my view, Initiative 2007–2008 No. 17 passes muster under the single subject requirement because it contains a single, easily identifiable subject—namely, the creation of a new department of environmental conservation.

### A.

The majority concludes that proposed Initiative 2007–2008 No. 17 imposes a "public trust" doctrine on Colorado natural resources law. Maj. op. at 875. It focuses on section 7 of the initiative, which provides:

The Colorado Department of Environmental Conservation is created by the people of the state of Colorado to *ensure public resource conservation stewardship*, and in connection therewith, the Colorado Department of Environmental Conservation, and the elected members of the Board of Commissioners of the Colorado Depart-

---

1. Article V, section 1(5.5) of the Colorado Constitution states,

    No measure shall be proposed by petition containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any measure which shall not be expressed in the title, such measure

shall be void only as to so much thereof as shall not be so expressed. If a measure contains more than one subject, such that a ballot title cannot be fixed that clearly expresses a single subject, no title shall be set and the measure shall not be submitted to the people for adoption or rejection at the polls.

ment of Environmental Conservation, *shall have, as priority, the responsibilities to steward and protect* the public ownership and public conservation values in lands, waters, public resources, and wildlife. *Conflict between economic interest and conservation stewardship responsibilities to, and for, the public's resources and resource conservation values shall be resolved in favor of public ownerships and public values.*

*Id.* at 883 (Appendix B) (emphasis added).

This section describes the mission of the department (namely, to "ensure public resource conservation stewardship") and its "priority" (namely, the responsibility to "steward and protect the public ownership and public conservation values" in natural resources). The final "conflict" sentence states that the department must place conservation stewardship over economic concerns. When read in context, this "conflict" language is simply a further description of the department's mission and priorities, not—as the majority concludes—a freestanding "controlling legal standard" governing all of Colorado natural resources law. *See id.* at 875.

We have repeatedly held that it is not our role at this stage to construe the proposed initiative. *See, e.g., In re Proposed Initiative for 2001–2002 No. 43*, 46 P.3d 438, 443 (Colo. 2002); *In re Proposed Initiatives for 2001–2002 Nos. 21 & 22*, 44 P.3d 213, 215–16 (Colo.2002); *In re Proposed Initiative for 1999–2000 No. 200A*, 992 P.2d 27, 30 (Colo. 2000). This is a matter "for judicial determination in a proper case should the voters approve the initiative." *In re Proposed Initiative for 1999–2000 No. 200A*, 992 P.2d at 30. Nevertheless, the majority strays into construction in this case by giving the initiative's "conflict" language an extraordinarily broad interpretation—an interpretation that goes significantly beyond the plain language of the initiative itself.

For support of its interpretation, the majority cites to the fact that prior proposed initiatives have imposed a public trust doctrine. Initiative 2007–2008 No. 17, it concludes, is simply a "variation" of those prior initiatives. Maj. op. at 875. Yet this sort of

analysis ignores critical differences between the language used in the prior initiatives and the language used in the proposed initiative we consider today. In *Waters II*, for example, the proposed initiative would have required "the State of Colorado *[to] adopt and defend a strong public trust doctrine* regarding the public's rights and ownerships in and of the waters in Colorado." *In re Proposed Initiative "Public Rights in Waters II"*, 898 P.2d 1076, 1077 n. 1 (Colo.1995) (emphasis added). Similarly, in *Hufford*, the proposed initiative provided that the "State of Colorado *shall adopt, and defend, a public trust doctrine* to protect the public's rights and ownerships in and of the waters in Colorado." *In re Proposed Initiative "1996–6"*, 917 P.2d 1277, 1278 n. 2 (Colo.1996) (per curiam) (emphasis added); *see also In re Proposed Initiative on Water Rights*, 877 P.2d 321, 324 n. 3 (Colo.1994) (requiring the state to *"adopt and defend a strong public trust doctrine* regarding the publics' [sic] rights and ownerships in and of the waters in Colorado") *("Swingle")* (emphasis added). These prior initiatives would have required the state to "adopt and defend a strong public trust doctrine." By contrast, Initiative 2007–2008 No. 17 does not require the state to "adopt" anything, nor does it employ the phrase "public trust doctrine." Indeed, its language does not purport to change any substantive natural resources law currently on the books.

The majority concludes that Initiative 2007–2008 No. 17 merely "recasts the words of the prior initiatives we considered in *Waters II, Hufford,* and *Swingle."* Maj. op. at 875. It is true that the initiative uses many of the same words as those prior initiatives, but it leaves some important ones out—namely, those that would change Colorado natural resources law. While the initiative may use many of the same words that are found in prior initiatives, it does so in the context of defining the mission of the proposed department of environmental conservation, rather than in the context of ordering the state to adopt a significant change in Colorado natural resources law. The majority errs, in my view, by failing to recognize this critical difference.

## B.

The majority's second error is its conclusion that Initiative 2007–2008 No. 17 fails under *Waters II* because it pairs "conservation stewardship" with a structural change— that is, the consolidation of existing environmental boards and commissions into a new department. Maj. op. at 875–76. Unlike *Waters II*, however, there is a sufficient connection in this case between the "conservation stewardship" mission and the new department tasked with pursuing it.

In *Waters II*, we concluded that there was an insufficient connection between one part of an initiative that imposed election requirements on water districts and a second part that required the state of Colorado to adopt and defend new public trust water rights. 898 P.2d at 1080. We noted that there was no indication "how the election changes would facilitate the development of a 'public trust' doctrine." *Id.* By contrast, the present case concerns an initiative in which the structural change (i.e., the creation of a new department) is sufficiently linked to the "conservation stewardship" mission, as it is the department that will carry out the mission.

The majority seems to believe that, under *Waters II*, the "conservation stewardship" mission cannot be paired with a structural change of *any* kind. *See, e.g.,* maj. op. at 875. Yet *Waters II* did not sweep so broadly. The problem in *Waters II* was that no sufficient link existed between the public trust doctrine and the proposed structural change, not that the doctrine always has to be proposed by itself. Here, the proponents of Initiative 2007–2008 No. 17 have provided the very link that we said was missing in *Waters II*, as the new department is created in order to promote "conservation stewardship."

The majority also cites *Waters II* for the proposition that concepts such as "water," "environmental conservation," and "conservation stewardship" are too broad to serve as the subject of Initiative 2007–2008 No. 17. Maj. op. at 875. These "subjects" proposed by the majority are simply straw men, however, as the initiative's proponents do not suggest any of them. Instead, the initiative is focused on a much narrower theme—that

is, the creation of the new department of environmental conservation. Contrary to the majority's suggestion, *id.,* it would come as no surprise to voters that a new department of environmental conservation would have "conservation stewardship" as its priority.

In its application of the single subject test today, the majority significantly increases the degree of scrutiny to which we subject proposed initiatives. Traditionally, we have stated that there must be a "necessary or proper" connection between the component parts of a proposed initiative. *See, e.g., Waters II,* 898 P.2d at 1079; *In re Proposed Initiatives for 1999–2000 Nos. 227 & 228,* 3 P.3d 1, 4 (Colo.2000); *In re Proposed Initiative for 1999–2000 No. 29,* 972 P.2d 257, 265 (Colo.1999); *In re Proposed Amendment Adding Paragraph (d) Subsection (8) of Section 20 of Article X,* 908 P.2d 125, 128 (Colo. 1995); *In re Proposed Amendment Adding Subsection (10) to Section 20 of Article X,* 900 P.2d 121, 125 (Colo.1995). Under the "necessary or proper connection" standard, the single subject requirement is not violated unless an initiative has "at least two distinct and separate purposes which are not dependent upon or connected with each other." *Waters II,* 898 P.2d at 1078–79; *In re Proposed Initiatives for 1999–2000 Nos. 227 & 228,* 3 P.3d at 4; *In re Proposed Initiative for 1999–2000 No. 29,* 972 P.2d at 261; *In re Proposed Initiative "1996–6",* 917 P.2d at 1279–80; *In re Proposed Amendment Adding Paragraph (d) Subsection (8) of Section 20 of Article X,* 908 P.2d at 128; *In re Proposed Amendment Adding Section 2 to Article VII,* 907 P.2d 586, 590 (Colo.1995); *In re Proposed Petition for Amendment Adding Subsection (10) to Section 20 of Article X,* 900 P.2d at 125. In this case, it is difficult to see how "conservation stewardship" is not dependent upon or connected with the creation of the new department itself, as the concept would have no existence—either as a legal standard (as interpreted by the majority) or as a mission (as I would read it)— without a department to pursue it. In my view, "conservation stewardship" is sufficiently connected with the creation of the new department to meet the single subject

requirement as it has been traditionally defined in our caselaw.

The majority comes to the contrary conclusion, stating without elaboration that the new department's mission of "conservation stewardship" is "not dependent upon or necessarily connected with" the creation of the new department. Maj. op. at 875. By this, the majority appears to mean that because it is possible to create a new department without giving it a mission, the mission is not "dependent upon" or "necessarily connected with" the new department. In other words, because the initiative *could* live without the mission provision, it *must*. The majority's approach requires an initiative's proponents to draw their proposal as narrowly as possible, leaving out components that are sufficiently connected with, but not absolutely necessary to, carrying out the initiative's central theme.

The majority's application of the single subject requirement in this case bears little resemblance to our traditional "necessary or proper" test, which is designed to root out incongruous subjects. *See In re Proposed Amendment Adding Subsection (10) to Section 20 of Article X,* 900 P.2d at 125 (stating that an initiative's component parts must not be "disconnected or incongruous"). Taking our cue from the legislature, we have recognized that "[t]he single-subject requirement must be liberally construed." *In re Proposed Initiative 1997–1998 No. 74,* 962 P.2d 927, 929 (Colo.1998); *see also* § 1–40–106.5(2), C.R.S. (2007) ("It is the intent of the general assembly that [the single subject requirement] be liberally construed...."). The majority's approach flies in the face of this liberal construction by imposing a new level of heightened scrutiny under which all but the narrowest of proposed initiatives will fail.

Today's decision effectively requires the initiative's proponents to accomplish a single goal by proposing two separate initiatives— one to consolidate existing boards and commissions into a new department, and a second to give that department a mission to promote conservation stewardship. Under the majority's approach, the proponents must be content with a new department without a mission, or a mission without a new department. In my view, the single subject requirement does not require such a choice.

## II.

Our job today is to assess whether Initiative 2007–2008 No. 17 contains more than a single subject. The proposed initiative might be a good idea or a bad idea; we must leave that decision to the voters. *In re Proposed Initiative for 2005–2006 No. 55,* 138 P.3d 273, 284 (Colo.2006) (Coats, J., dissenting). Because the proposed initiative before us today does, in my view, contain a single subject, I respectfully dissent from the majority's opinion.

I am authorized to say that Justice RICE and Justice COATS join this dissent.

## APPENDIX A (TITLES)

**Proposed Initiative 2007–2008 # 17** (Unofficially captioned "New State Department and Elected Board for Public Resource Conservation" by legislative staff for tracking purposes. Such caption is not part of the titles set by the Board.)

The Title as designated and fixed by the Board is as follows:

An amendment to the Colorado constitution concerning the creation of a new department of environmental conservation, and, in connection therewith, establishing an elected board of commissioners to supervise the department; specifying the department's duties and powers and declaring that conflict between economic interest and conservation stewardship responsibilities shall be resolved in favor of public ownerships and public values; transferring certain existing governmental programs and entities to the department, including the great outdoors Colorado program; transferring to the board of commissioners the authority to appoint members of certain boards and commissions relating to those programs and entities; vesting procedural management responsibility for the department in an executive director, subject to supervision by the board of commissioners; identifying revenue sources for the department; and exempting the department from

the fiscal limits contained in section 20 of article X of the Colorado constitution.

The ballot title and submission clause as designated and fixed by the Board is as follows:

Shall there be an amendment to the Colorado constitution concerning the creation of a new department of environmental conservation, and, in connection therewith, establishing an elected board of commissioners to supervise the department; specifying the department's duties and powers and declaring that conflict between economic interests and conservation stewardship responsibilities shall be resolved in favor of public ownerships and public values; transferring certain existing governmental programs and entities to the department, including the great outdoors Colorado program; transferring to the board of commissioners the authority to appoint members of certain boards and commissions relating to those programs and entities; vesting procedural management responsibility for the department in an executive director, subject to supervision by the board of commissioners; identifying revenue sources for the department; and exempting the department from the fiscal limits contained in section 20 of article X of the Colorado constitution?

## APPENDIX B (INITIATIVE)

The text of Proposed Initiative 2007–2008 # 17 is as follows:

Be it Enacted by the People of the State of Colorado: The constitution of the state of Colorado is amended BY THE ADDITION OF A NEW ARTICLE to read:

## ARTICLE XXX

### Environmental Conservation

Section 1. Colorado department of environmental conservation created. THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION IS CREATED BY THE PEOPLE OF THE STATE OF COLORADO TO ENSURE PUBLIC RESOURCE CONSERVATION STEWARDSHIP, AND IN CONNECTION THEREWITH, THE OPERATION AND MANAGEMENT OF THE DEPARTMENT OF ENVIRONMENTAL CONSERVATION SHALL BE COMPLIANT WITH PROVISIONS CONTAINED WITHIN THIS ARTICLE XXX AND WITH STATUTORY PROVISIONS FOR LEGISLATIVE DIRECTION FOR A DEPARTMENT CONTAINED WITHIN ARTICLE 7 OF TITLE 2, COLORADO REVISED STATUTES, OR ANY ANALOGOUS SUCCESSOR STATUTE.

Section 2. Supervision and management of public lands, resources, waters, and wildlife by elected commissioners-responsibilities, conflicts with other provisions. THE SUPERVISION, MANAGEMENT, AND POLICY DETERMINATIONS REGARDING THE PUBLIC'S RESOURCES AND PUBLIC RESOURCE CONSERVATION STEWARDSHIP PROGRAMS WITHIN THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION SHALL BE THE RESPONSIBILITY OF THE ELECTED BOARD OF COMMISSIONERS OF THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION. SECTION 1 OF ARTICLE V OF THE COLORADO CONSTITUTION SHALL BE THE AUTHORITY USED BY THE PUBLIC IN THE FORMATION OF THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION. SHOULD CONFLICT WITH OTHER COLORADO CONSTITUTIONAL PROVISIONS ARISE HEREAFTER, PROVISIONS WITHIN ARTICLE XXX SHALL BE HELD DOMINANT OVER OTHER, PREVIOUS CONSTITUTIONAL PROVISIONS.

Section 3. Colorado department of environmental conservation is created. Boards, divisions, programs and commissions transferred. (1) THE FOLLOWING DEPARTMENTAL DIVISIONS, AND STATE OF COLORADO BOARDS, COMMISSIONS AND PROGRAMS, AND THE ADMINISTRATION THERETO, ARE TRANSFERRED FROM VARIOUS COLORADO GOVERNMENTAL ENTITIES TO

THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION, AND TO THE MANAGEMENT AND PROGRAM SUPERVISION OF THE ELECTED COMMISSIONERS FOR THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION;

(a) COLORADO NATURAL AREAS PROGRAM;

(b) COLORADO WATER CONSERVATION BOARD;

(c) COLORADO DIVISION OF FORESTRY;

(d) COLORADO DIVISION OF STATE PARKS;

(e) COLORADO WATER QUALITY CONTROL DIVISION;

(f) COLORADO DIVISION OF WILDLIFE;

(g) COLORADO LAND USE COMMISSION;

(h) COLORADO CAPTIVE WILDLIFE AND ALTERNATE LIVESTOCK BOARD;

(i) STATE BOARD OF LAND COMMISSIONERS;

(j) GREAT OUTDOORS COLORADO PROGRAM;

(k) AND, AS MAY BE DETERMINED BY THE EXECUTIVE COMMITTEE OF THE LEGISLATIVE COUNCIL, ANY OTHER COLORADO STATE AGENCY, DIVISION, PROGRAM, OFFICE OR BOARD OF THE COLORADO STATE GOVERNMENT, THAT EITHER NOW EXISTS, OR SHALL BE CREATED, AS A MANDATED PROGRAM OR AS A STATE–RECOGNIZED, NEWLY–CREATED GOVERNMENTAL ACTIVITY, AUTHORITY, OR PROGRAM THAT HAS BEEN EMPOWERED BY THE COLORADO CONSTITUTION, OR BY COLORADO STATE STATUTE, OR WILL BE EMPOWERED IN THE FUTURE, TO ACT IN, OR HAVE, STEWARDSHIP AND TRUST CAPACITIES FOR THE PUBLIC'S INTEREST IN STATE OR IN OTHERWISE STATE OR FEDERALLY MANAGED PUBLIC LANDS, PUBLIC RESOURCES, WATERS AND WILDLIFE, SHALL BE TRANSFERRED TO THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION.

(2) THE FOLLOWING COLORADO BOARDS COMMISSIONS, AND COUNCILS, PROVIDING GUIDANCE, POLICY GUIDELINE TO PROGRAM ADMINISTRATION, AND POLICY DIRECTION, INCLUDING OPERATIONS, TO VARIOUS STATE OF COLORADO GOVERNMENT DEPARTMENTS, DIVISIONS, AND PROGRAMS ARE TRANSFERRED FROM THE OFFICE OF THE GOVERNOR OF COLORADO TO THE MANAGEMENT AND SUPERVISION OF THE ELECTED COMMISSIONERS FOR THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION;

(a) STATE BOARD OF THE GREAT OUTDOORS COLORADO TRUST FUND;

(b) HAZARDOUS WASTE COMMISSION;

(c) STATE BOARD OF LAND COMMISSIONERS;

(d) COLORADO LAND USE COMMISSION;

(e) COLORADO NATURAL AREAS COUNCIL;

(f) COLORADO BOARD OF PARKS AND OUTDOOR RECREATION;

(g) POLLUTION PREVENTION ADVISORY BOARD;

(h) COLORADO WATER CONSERVATION BOARD;

(i) COLORADO WATER QUALITY CONTROL COMMISSION;

(j) WILDLANDS AND URBAN INTERFACE WILDLIFE WORKING GROUP;

(k) COLORADO WILDLIFE COMMISSION;

(l) COLORADO JOINT REVIEW PROCESS;

(m) AND, AS MAY BE DETERMINED BY THE EXECUTIVE COMMITTEE OF THE LEGISLATIVE COUNCIL, ANY OTHER COLORADO STATE

AGENCY, DIVISION, PROGRAM, OFFICE OR BOARD OF COLORADO STATE GOVERNMENT, THAT EITHER NOW EXISTS, OR SHALL BE CREATED, AS A MANDATED PROGRAM OR AS A STATE–RECOGNIZED, NEWLY–CREATED GOVERNMENTAL ACTIVITY, AUTHORITY, OR PROGRAM THAT HAS BEEN EMPOWERED BY THE COLORADO CONSTITUTION, OR BY COLORADO STATE STATUTE, OR WILL BE EMPOWERED IN THE FUTURE, TO ACT IN, OR HAVE, STEWARDSHIP AND TRUST CAPACITIES FOR THE PUBLIC'S INTERESTS IN STATE OR IN OTHERWISE STATE OR FEDERALLY MANAGED PUBLIC LANDS, PUBLIC RESOURCES, WATERS AND WILDLIFE, SHALL BE TRANSFERRED TO THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION.

**Section 4. Election of the board of commissioners of the Colorado department of environmental conservation— members from congressional districts. Compensation.** (1) THE INDIVIDUAL MEMBERS OF THE BOARD OF COMMISSIONERS OF THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION SHALL BE ELECTED AT REGULAR STATEWIDE BIENNIAL GENERAL ELECTIONS, WITH COMMISSION MEMBERS ELECTED FROM ELIGIBLE CANDIDATES WHO RESIDE WITHIN ONE OF THE SEVERAL COLORADO CONGRESSIONAL DISTRICTS. THE BOARD OF COMMISSIONER MEMBERS SHALL BE ELECTED BY A MAJORITY VOTE OF THOSE VOTING FOR THAT OFFICE IN A STATEWIDE GENERAL ELECTION. BOARD OF COMMISSION MEMBERS ELECTED FROM ODD–NUMBERED COLORADO CONGRESSIONAL DISTRICTS SHALL SERVE UNTIL THE LAST DAY OF DECEMBER, 2012 ON THE COMMISSION FOR THE INTITIAL TERM OF OFFICE. BOARD OF COMMISSION MEMBERS FROM EVEN–NUMBERED COLORADO CONGRESSIONAL DISTRICTS SHALL SERVE UNTIL LAST DAY OF DECEMBER, 2014 ON THE COMMISSION FOR THEIR INTITIAL TERM OF OFFICE. NEWLY ELECTED COMMISSIONERS SHALL BE SWORN TO OFFICE ON JANUARY 1 FOLLOWING MEMBER OFFICE ELECTIONS. ALL MEMBER TERMS OF OFFICE SHALL BE FOUR–YEAR TERMS OF OFFICE FOR ALL SUBSEQUENT COMMISSION TERMS.

(a) A REGISTERED VOTER, RESIDING WITHIN ONE OF THE CONGRESSIONAL DISTRICTS WITHIN COLORADO, SHALL BECOME ELIGIBLE TO BECOME A CANDIDATE FOR ELECTION TO THE BOARD OF COMMISSIONERS OF THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION BY SUBMITTING TO THE COLORADO SECRETARY OF STATE ONE HUNDRED FIFTY (150) DAYS PRIOR TO AN ELECTION PETITIONS WITH THE NAMES AND ADDRESSES AFFIXED OF TWO HUNDRED (200) REGISTERED VOTERS FROM THE CONGRESSIONAL DISTRICT TO BE REPRESENTED. AFTER CERTIFICATION BY THE COLORADO SECRETARY OF STATE OF THE NAMES AND ADDRESSES PRESENTED ON THE NOMINATING PETITION TO BE ACCOMPLISHED WITHIN THIRTY (30) DAYS AFTER SUBMISSION OF PETITIONS, THE SECRETARY OF STATE SHALL CERTIFY THE NAME OF THE CANDIDATE TO THE BALLOT FOR ELECTION TO THE COMMISSION BOARD. (b) COMMISSIONERS SERVING ON THE BOARD OF COMMISSIONERS OF THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION SHALL RESIDE WITHIN THE CONGRESSIONAL DISTRICT THEY ARE TO REPRESENT.

(2) A STATEWIDE SPECIAL ELECTION, TO BE HELD IN NOVEMBER 2009 AT THE DATE RESERVED FOR STATEWIDE ELECTIONS CONCERNING FISCAL MATTERS, SHALL BE CONDUCTED FOR THE ELECTION OF INITIAL

APPENDIX B (INITIATIVE)—Continued MEMBERS TO THE BOARD OF COMMISSIONERS TO THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION.

(3) VACANCY ELECTIONS, AS REQUIRED, SHALL BE HELD AT THE NEXT BIENNIAL GENERAL ELECTION AND SHALL BE FOR THE REMAINING PERIOD OF THAT OFFICE TERM. VACANCY ON THE COMMISSION BOARD, UNTIL THAT POSITION CAN BE FILLED AT A REGULAR ELECTION, SHALL BE APPOINTED BY A MAJORITY VOTE OF THE EXECUTIVE COMMITTEE OF THE LEGISLATIVE COUNCIL.

(4) MEMBERS OF THE BOARD OF COMMISSIONERS FOR THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION SHALL BE ELECTED TO NO MORE THAN TWO TERMS OF OFFICE, TERMS OF OFFICE BEING COMPLIANT WITH SECTION 11 OF ARTICLE XVIII OF THE CONSTITUTION.

(5) COMPENSATION FOR ELECTED MEMBERS OF THE GOVERNING BOARD OF COMMISSIONERS OF THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION SHALL BE COMMENSURATE WITH COMPENSATION PAID TO EXECUTIVE DIRECTORS OF STATE OF COLORADO GOVERNMENTAL DEPARTMENTS.

Section 5. Appointment of the executive director of the Colorado department of environmental conservation. PROCEDURAL MANAGEMENT RESPONSIBILITIES FOR THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION SHALL RESIDE WITHIN THE OFFICE OF THE EXECUTIVE DIRECTOR OF THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION.

(a) THE EXECUTIVE DIRECTOR OF THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION SHALL SERVE AT THE PLEASURE OF THE ELECTED BOARD OF COMMISSIONERS OF THE DEPARTMENT.

(b) MATTERS OF ORGANIZATION, OPERATION, AND MANAGEMENT OF THE DEPARTMENT OF DEPARTMENTAL PROGRAMS AND THEIR OPERATIONS, SHALL BE UNDER THE SUPERVISION OF THE EXECUTIVE DIRECTOR OF THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION. POLICY DETERMINATIONS REGARDING MATTERS OF ORGANIZATION AND OPERATION OF DEPARTMENTAL PROGRAMS SHALL BE EFFECTIVE UPON AN AFFIRMATIVE AFFIRMATION OF A MAJORITY OF THE COMMISSION MEMBERS.

Section 6. Colorado governmental departmental reorganization in effect. THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION SHALL COMMENCE DEPARTMENTAL OPERATIONS JANUARY 1, 2010.

Section 7. Trust responsibilities of the Colorado department of environmental conservation. (1) THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION IS CREATED BY THE PEOPLE OF THE STATE OF COLORADO TO ENSURE PUBLIC RESOURCE CONSERVATION STEWARDSHIP, AND IN CONNECTION THEREWITH, THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION, AND THE ELECTED MEMBERS OF THE BOARD OF COMMISSIONERS OF THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION, SHALL HAVE, AS PRIORITY, THE RESPONSIBILITIES TO STEWARD AND PROTECT THE PUBLIC OWNERSHIP AND PUBLIC CONSERVATION VALUES IN LANDS, WATERS, PUBLIC RESOURCES, AND WILDLIFE. CONFLICT BETWEEN ECONOMIC INTEREST AND CONSERVATION STEWARDSHIP RESPONSIBILITIES TO, AND FOR, THE PUBLIC'S RESOURCES AND RESOURCE CONSERVATION VALUES SHALL BE RESOLVED IN FAVOR OF PUBLIC OWNERSHIPS AND PUBLIC VALUES.

(a) RESPONSIBILITIES OF THE BOARD OF COMMISSIONERS OF COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION, AND OF THE DEPARTMENT, SHALL INCLUDE: POLICY DETERMINATIONS, SUPERVISION, OPERATIONS OF PROGRAMS AND ACTIVITIES, MANAGEMENT, AND STEWARDSHIP OF PUBLIC RESOURCES INCLUDING MANAGEMENT AND POLICY DETERMINATIONS REGARDING PARKS, MONUMENTS, GOVERNMENT MANAGED LANDS, NATURAL HERITAGE AREAS, POLICY REVIEW AND EVALUATION AND OVERSIGHT OF PERMITTING REGARDING MATTERS OF STATE INTEREST AND ACTIVITIES OF STATE CONCERN INCLUDING THOSE MATTERS AND CONCERNS THAT PERTAIN TO RESOURCE DEVELOPMENT AND ENVRIONMENTAL PERMITTING OF DEVELOPMENT ACTIVITIES ON FEDERAL MANAGED PUBLIC LANDS, AND OF SHORE LANDS; PROTECTION OF ARCHEOLOGICAL RESOURCES; MANAGEMENT AND RESTORTATION OF FOREST HEALTH OF STATE FORESTS; WATER CONSERVATION AND THE PROTECTION AND PRESERVATION OF PUBLIC VALUES IN WATER; MANAGEMENT OF CORRECTION EFFORTS TO REDRESS UNRESOLVED HARMFUL IMPACTS TO THE PUBLIC'S RESOURCES; PROTECTION, CONSERVATION, AND RESTORATION OF WILDLIFE RESOURCES, WILDLIFE HABITAT, AND RESPONSBILITY FOR PREDATOR MANAGEMENT; MANAGEMENT OF WILDLIFE RESOURCES WITHIN ANY WILDLAND AND URBAN LANDS INTERFACE; PROTECTION STRATEGIES FOR MIGRATORY BIRDS; PROTECTION OF STATE AND FEDERALLY DESIGNATED THREATENED AND ENDANGERED SPECIES OF PLANTS AND ANIMALS; PRESERVATION AND PROTECTION OF FISHERIES HABITAT RESOURCES; FISH RESTORATION PROGRAMS, FISH HEALTH, AND AQUATIC RESOURCE STEWARDSHIP PROGRAMS; REGULATION OF AND LICENSING OF TRANSPORTATION OF FISH, GAME, AND EXOTIC ANIMALS INTO AND WITHIN COLORADO; WATERSHED REVIEW, EVALUATION AND DESIGNATION; FLOODPLAIN REVIEW, EVALUATION, AND DESIGNATION; IMPLEMENTATION AND COORDINATION OF STATE TRAILS SYSTEMS, TRAILS DEVELOPMENT, AND MANAGEMENT OF PUBLIC FUNDS ESTABLISHED FOR THOSE PURPOSES; RURAL ENVIRONMENTAL CONSERVATION PROGRAMS; FOSTERING OF PARTNERSHIPS FOR WILDLIFE ENHANCEMENT; PRESERVATION OF FENS AND WETLANDS INCLUDING THOSE THAT FUNCTION AS POLLUTANT TRAPS, ASSIST IN FLOOD CONTROL, AND HELP CONTROL RUNOFF; PROMOTION OF WETLAND CONSERVATION AND RESERVE PROGRAMS; AND REGULATION OF HUNTING, OFF–ROAD VEHICLES, AND BOATING.

(I) PERMITTING PROGRAM ELEMENTS FOR MATTERS OF STATE INTEREST AND ACTIVITIES OF STATE CONCERN REGARDING RESOURCE DEVELOPMENT ON FEDERALLY MANAGED PUBLIC LANDS WITHIN COLORADO SHALL BE RETAINED, AS AUTHORIZED, BY COLORADO STATE AND ELIGIBLE LOCAL GOVERNMENT ENVIRONMENTAL PERMITTING AUTHORITIES.

(II) CRITERIA FOR THE ADMINISTRATION OF MATTERS OF STATE INTEREST AND ACTIVITIES OF STATE CONCERN

SHALL BE COMPLIAINT WITH ARTICLE 65 AND ARTICLE 65.1 OF TITLE 24 OF THE COLORADO REVISED STATUTES, OR ANY ANALOGOUS SUCCESSOR STATUTES.

(b) ANY CITIZEN OF THE STATE OF COLORADO SHALL HAVE STANDING TO PETITION THE BOARD OF COMMISSIONERS OF THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION TO REQUEST THE DEPARTMENT, OR THE COMMISSION, EVALUATE, ANALYZE AND DESIGNATED ADDITIONAL CONSERVATION STEWARDSHIP MATTERS, WITH ANY ADDITIONAL STEWARDSHIP MATTER BEING ADDED TO DEPARTMENTAL PRIORITY UPON APPROVAL OF THE COMMISSION BOARD.

(2) THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION IS CREATED BY THE PEOPLE OF THE STATE OF COLORADO TO ENSURE PUBLIC RESOURCE CONSERVATION STEWARDSHIP, AND IN CONNECTION THEREWITH, THE BOARD OF COMMISSIONERS OF THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION SHALL:

(a) SHALL SIT, AND ACT, AS THE COLORADO STATE BOARD OF PARKS AND OUTDOOR RECREATION.

(b) SHALL SIT AND ACT, AS THE COLORADO LAND USE COMMISSION.

(c) SHALL SIT, AND ACT, AS THE COLORADO WILDLIFE COMMISSION.

(d) SHALL BE RESPONSIBLE FOR THE APPOINTMENT OF MEMBERS OR OFFICERS OR PROGRAMS STAFF TO THE FOLLOWING BOARDS, COMMISSIONS, COUNCILS, GROUPS AND PROGRAMS, OR TO SUCCESSOR BOARDS, COMMISSIONS, COUNCILS, GROUPS OR PROGRAMS;

(I) STATE BOARD OF THE GREAT OUTDOORS COLORADO TRUST FUND;

(II) HAZARDOUS WASTE COMMISSION;

(III) STATE OF COLORADO BOARD OF LAND COMMISSIONERS;

(IV) COLORADO LAND USE COMMISSION;

(V) COLORADO NATURAL AREAS COUNCIL;

(VI) POLLUTION PREVENTION ADVISORY BOARD;

(VII) STATE OF COLORADO EMERGENCY PLANNING AND COMMUNITY RIGHT-TO KNOW COUNCIL;

(VIII) COLORADO WATER CONSERVATION BOARD;

(IX) COLORADO WATER QUALITY CONTROL COMMISSION;

(X) WILDLANDS AND URBAN INTERFACE WILDLIFE WORKING GROUP;

(XI) AND, AS MAY BE DETERMINED BY THE EXECUTIVE COMMITTEE OF THE LEGISLATIVE COUNCIL, ANY OTHER COLORADO STATE AGENCY, DIVISION, PROGRAM, OFFICE OR BOARD OF COLORADO STATE GOVERNMENT, THAT EITHER NOW EXISTS, OR SHALL BE CREATED, AS A MANDATED PROGRAM OR AS A STATE-RECOGNIZED, NEWLY-CREATED GOVERNMENTAL ACTIVITY, AUTHORITY, OR PROGRAM THAT HAS BEEN EMPOWERED BY THE COLORADO CONSTITUTION, OR BY COLORADO STATE STATUTE, OR WILL BE EMPOWERED IN THE FUTURE, TO ACT IN, OR HAVE, STEWARDSHIP AND TRUST CAPACITIES FOR THE PUBLIC'S INTERESTS IN STATE OR IN OTHERWISE STATE OR FEDERALLY MANAGED

PUBLIC LANDS, PUBLIC RESOURCES, WATERS AND WILDLIFE, SHALL BE TRANSFERRED TO THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION.

(XII) APPOINTMENT TO ANY BOARD, COMMISSION, COUNCIL OR ADVISORY GROUP OF A MEMBER OR OFFICER BY THE BOARD OF COMMISSIONERS OF THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION SHALL NOT BE SUBJECT TO ANY MANNER OF LEGISLATIVE CONFIRMATION.

(3) THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION IS CREATED BY THE PEOPLE OF THE STATE OF COLORADO TO ENSURE PUBLIC RESOURCE CONSERVATION STEWARDSHIP, AND IN CONNECTION THEREWITH;

(a) THE BOARD OF COMMISSIONERS OF THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION MAY CONVENE, EITHER UPON THE INTIATIVE OF ANY DEPARTMENTAL DIVISON THEREOF, OR BY THE BOARD SITTING AS THE COLORADO LAND USE COMMISSION, AS AUTHORIZED IN ARTICLE 65 OF TITLE 24 OF THE COLORADO REVISED STATUTES OR ANY ANALOGOUS SUCCESSOR STATUTE, EITHER INDEPENDENTLY OR UPON PERMISSION FROM A MEMBER OF THE PUBLIC, TO REVIEW, CONSIDER, AND HAVE THE AUTHORITY TO ISSUE COMPLIANCE PERMIT DIRECTIVES, AS AUTHORIZED WITHIN THE COLORADO LAND USE ACT, ARTICLE 65 AND ARTICLE 65.1 OF TITLE 24 OF THE COLORADO REVISED STATUTES, OR ANY ANALOGOUS SUCCESSOR STATUTE, THAT HAS AS PURPOSE THE DESIGNATING OF MATTERS OF STATE INTEREST AND ACTIVITES OF STATE CONCERN THAT COULD INITIATE STATE GOVERNMENTAL, MULTI–AGENCY REVIEW AND PERMITTING UNDER AUTHORITY OF THE COLORADO JOINT REVIEW PROCESS OF ANY ACTIVITY THAT COULD IMPACT PUBLIC RESOURCE CONSERVATION STEWARDSHIP, OR THE PUBLIC'S OWNERSHIP OR PUBLIC VALUES IN PUBLIC NATURAL RESOURCES.

(b) THE BOARD OF COMMISSIONERS OF THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION MAY INITIATE IDENTIFICATION, REQUIRE DESIGNATION, AND MAY REQUIRE PROMULGUATION AND ADOPTION OF GUIDELINES FOR PERMITTING OF ACTIVITIES REGARDING MATTERS OF STATE INTEREST AND ACTIVITIES OF STATE CONCERN WITHIN COLORADO. THE BOARD OF COMMISSIONERS OF THE COLORADO DEPARTMENT OF ENVRIONMENTAL CONSERVATION SHALL AUTHORIZE THE DEPARTMENT OF ENVIRONMENTAL CONSERVATION TO REVIEW AND COMMENT ON LOCAL GOVERNMENT ARTICLE 65.1 OF TITLE 24 COLORADO REVISED STATUTES, OR ANY ANALGOUS SUCCESSOR STATUTE, AUTORITIES, AND MAY AUTHORIZE THE DEPARTMENT TO REQUIRE AN ELIGIBLE LOCAL GOVERNMENT, AS IDENTIFIED WITHIN ARTICLE 65.1 OF TITLE 24 COLORADO REVISED STATUTES, OR ANY ANALOGOUS SUCCESSOR STATUTE, TO ADOPT STATE–APPROVED DEPARTMENT OF ENVIRONMENTAL CONSERVATION GUIDELINES FOR REGULATION OF MATTERS OF STATE INTEREST AND ACTIVITIES OF STATE CONCERN.

**Section 8. Licenses, fees, and revenues necessary for the operation and management of the Colorado department of environmental conservation.** (1) FEES, REVENUES, PAYMENTS, AND ALL MONIES GENERATED WITHIN AND UNDER THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION AS LICENSES, OR AS PENALTIES, OR AS ASSESSMENTS, OR AS INTERGOVERNMENTAL TRANSFERS FROM ANY SOURCES, OR FROM GRANTS OR FROM REVENUES OF ANY MANNER, SHALL BE USED BY THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION FOR DEPARTMENT PROGRAMS AND OPERATIONS OF THE DEPARTMENT. (2) FUNDS FOR THE OPERATION OF THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION MAY BE DERIVED FROM THE COLORADO GENERAL FUND.

(a) DEVELOPMENT OF AN ANNUAL OPERATING BUDGET FOR THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION SHALL BE GENERATED WITHIN THE DEPARTMENTAL BUDGET SETTING PROCESS ESTABLISHED TO GENERATE THE ANNUAL OPERATING BUDGETS FOR STATE OF COLORADO DEPARTMENTS.

(b) THE ANNUAL BUDGET FOR THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONVSERVATION SHALL BE ADOPTED BY THE COLORADO GENERAL ASSEMBLY AS PART OF THE BUDGET ENACTING PROCESS ESTABLISHED FOR THE ENACTING OF BUDGETS FOR COLORADO STATE GOVERNMENT DEPARTMENTS.

(3) NO MANNER OF FISCAL REGULATION CONTAINED WITHIN SECTION 20 OF ARTICLE X OF THE COLORADO CONSTITUTION, EXCEPT THAT OF THE ABILITY OF THE PUBLIC TO INITIATE FUNDING FOR DEPARTMENTAL PROGRAMS AND FOR PROJECTS USING GUIDELINES AND PROCEDURES ENABLED WITHIN SECTION 1 OF ARTICLE V OF THE COLORADO CONSTITUTION, SHALL APPLY TO THE OPERATION, FUNDING, RESERVES OR EXPENDITURES OF THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION.

**Section 9. Debt for public purpose.**

DEBT PROVISIONS FOR PUBLIC RESOURCES CONSERVATION PURPOSES AND EFFORTS REGARDING THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION SHALL BE GOVERNED BY ARTICLE XI AND ARTICLE XXVII OF THE COLORADO CONSTITUTION.

**Section 10. State board of the great outdoors Colorado trust fund.** ARTICLE XXVII OF THE COLORADO CONSTITUTION–GREAT OUTDOORS COLORADO PROGRAM–IS INTERGRATED INTO THE COLORADO DEPARTMENT OF ENVIRONMENTAL CONSERVATION FOR PURPOSES OF PROGRAM MANAGEMENT, PROGRAM OPERATION AND PROGRAM ADMINISTRATION. PROVISIONS OF SECTION 2, 3, 4 AND 5 OF ARTICLE XXVII RELATING TO THE ESTABLISHMENT AND OPERATION OF THE GREAT OUTDOORS COLORADO TRUST FUND SHALL NOT BE OTHERWISE IMPRESSED BY PROVISIONS OF ARTICLE XXX.

**Section 11. Provisions within article XXX are self-enacting and self-executing.** PROVISIONS OF THIS ARTICLE ARE SELF–ENACTING AND SELF–EXECUTING.